### FRANK H. HOLYOKE *vs.* CHARLOTTE E. HOLYOKE.

#### Penobscot. Opinion October 14, 1886.

*Divorce. "Extreme cruelty." "Cruel and abusive treatment." Libel. Demurrer. Falsely charging infidelity.*

"Extreme cruelty," as the third cause for divorce in the act of 1883, means "personal violence," intentionally inflicted, so serious as to endanger "life, limb or health," or to create reasonable apprehension of such danger.

Whatever treatment is proved in each particular case to seriously impair, or to seriously threaten to impair, either body or mind, endangers "life, limb or health," and constitutes "cruel and abusive treatment," the sixth cause for divorce in that act.

The false charge of infidelity is not legal cruelty, but in a given case, may be proved to so operate.

The averment in a libel for divorce, that the conduct specifically charged impaired, or seriously threatened to impair health, is sufficient on general demurrer, without particularly stating how the health was impaired.

ON EXCEPTIONS to the ruling of the justice presiding in sustaining a demurrer to the following libel for divorce [omitting formal part] :

"That he always conducted himself as a faithful, chaste and affectionate husband, but that the said [libellee,] wholly regardless of her marriage vows and obligations, has been guilty of cruel and abusive treatment of him in this : that between the 1st of January, 1885, and the date of this libel, almost daily, when he was at home, she would continually and incessantly

charge him with want of chastity, with different women and at different times, all of which was groundless and unfounded ; this not only privately to him, but frequently at his own table and in the presence of his children, [one or both] aged 4 and 15 respectively, and sometimes in the presence of his servant. That between the dates last mentioned his business frequently called him away from home for a longer or shorter time, and no matter where he went or when he went she met him invariably with the accusation that he had a woman with him during his absence. That between the dates before mentioned, at his dinner table she has called him a liar, a whoremaster, and used words of similar import frequently in the presence of one or both of his children, and the servant. That the usual and general tone and character of the conversation she addressed to him whenever he was in the house, was of the description indicated by the foregoing allegations and that it was incessant day and night ; in fact she never spoke to him about general matters or matters about the house unless she was obliged to. That between the dates mentioned, it has come to his knowledge that she went to her friends and acquaintances, and circulated among them all sorts of charges of unchastity against your libellant. That in the management of the children, and by her acts, language and deportment and treatment of your libellant, in their presence, she has endeavored to estrange from him, both of said children. That she refused and has refused to cohabit with him since the middle of June last, without any just cause whatever, and has occupied another bed by herself, all of said time, and fails to take any interest in his comfort and to bestow any care upon his clothing, or do any other wifely act. That she avoids and ignores him in his own house so far as she can, and that her treatment of him as before indicated, has rendered his home so unhappy, that existence in it longer than is necessary for food and shelter is utterly unsupportable.

"And your libellant avers, that these acts of his wife, her said charges and her treatment of him, and conduct toward him as hereinbefore stated, have so affected his peace of mind and his feelings, as to affect his health and endanger his health for the

future, and that she has been guilty thereby of cruel and abusive treatment of him."

*John Varney* and *F. H. Appleton*, for the libellant, cited : *Carpenter* v. *Carpenter*, 1 Pac. Rep. 122 and cases cited ; *Bailey* v. *Bailey*, 97 Mass. 373 ; *Kelly* v. *Kelly*, 51 Am. R. 732 ; *Pinkard* v. *Pinkard*, 14 Tex. 356 ; *Jones* v. *Jones*, 60 Tex. 469 ; *Scott* v. *Scott*, 61 Tex. 119 ; *Bahn* v. *Bahn*, 62 Tex. 518 ; *Lewis* v. *Lewis*, 5 Missouri, 278 ; *Smith* v. *Smith*, 8 Oregon, 101 ; *McMahan* v. *McMahan*, 9 Oregon, 525 ; *Palmer* v. *Palmer*, 45 Mich. 150 ; *Kennedy* v. *Kennedy*, 73 N. Y. 369 ; *Kelly* v. *Kelly*, 2 L. R. (Pro. & Div.) 31 ; 1 Bish. Mar. & Div. § § 725, 732, 733.

*Wilson and Woodward*, for libellee.

What constitutes cruel and abusive treatment, as such phrase is used in the statutes of this state relating to divorce has not yet been judicially determined, the statutes now existing upon the subject having been in force only since 1883.

"A statute of this sort ought to be, and commonly is, construed in harmony with the unwritten law. Within this principle, most of the statutes creating a jurisdiction to give divorce for cruelty are interpreted to mean, simply and only, the cruelty which was the ground for divorce from bed and board in England when our country was settled." 1 Bishop on Mar. & Div. § 718. (6th ed.)

" The general happiness of the married life is secured by its indissolubility. When people understand that they must live together, except for a very few reasons known to the law, they have to soften, by mutual accommodations, that yoke which they know they cannot shake off; they become good husbands and wives from the necessity of remaining husbands and wives." *Evans* v. *Evans*, 1 Hagg. Con. 35.

This passage was cited by the court in the case of *Bailey* v. *Bailey*, 97 Mass. 373, 380, as expressing the views under the influence of which the Massachusetts statute on the subject was passed, the general spirit of which is the same as that of the law of 1883, which we are considering.

The same views are stated at a little more length in the note to

the case of *Morris* v. *Morris*, 73 Am. Dec. 619 to 631, as the rule to be reduced from all the cases, as reviewed by the annotator, said note being the latest review of the authorities on the subject which we have been able to find.

Divorces are to be granted on the ground of cruelty, or cruel and abusive treatment, if at all, not as punishment for offences committed, but as a protection against future probable acts of cruelty, this probability being based upon the former conduct, and the character and disposition of the parties. Note to *Morris* v. *Morris*, 73 Am. Dec. 622; 1 Bishop on Mar. & Div. § 719.

All the circumstances together must be taken into consideration; for the question is, not whether this or that fact alone would render it the duty of the court to pronounce for the separation, but whether all the facts combined ought to lead to that result. 1 Bishop on Mar. & Div. § 747.

In England and most of our states, the doctrine, to which not an exception could easily be found, is abundantly established, that the apprehended harm must be bodily, in distinction from mental suffering. 1 Bishop Mar. & Div. § 722.

There are some cases decided by the courts of some of the western states that go farther than this, but they are cases which we think this court is little likely to follow. These cases are referred to in the note to *Morris* v. *Morris*, before cited, as giving a new definition to the term cruelty, and as not being sustained by the cases they refer to as sustaining cases. See 73 Am. Dec. 622.

All the authorities concur in holding that the causes of complaint which can justify a divorce must be grave and weighty, and that courts should exercise much caution and discrimination in granting divorces. *Barrere* v. *Barrere*, 4 Johns. c. 187, 189. 1 Bishop on Mar. & Div. § 743.

The court has no longer discretionary powers in the matter of divorce, the legislature having substituted for such discretionary powers certain stated causes, as before suggested, hence the doctrine of *Huston* v. *Huston*, 63 Maine, 184, is no longer applicable.

The libel does not disclose any attempt on the part of the

libellant to disabuse the mind of the libellee of the suspicions that evidently had in some way been instilled therein.

The libel does not show that the libellee's occupying a different bed by herself was not by his express request, or in consequence of his own conduct, or that he ever requested her to do otherwise; it does not disclose any attempt on his part to make any use of the weapons of kindness and civility towards her, the wife of his choice; it does not show that he any way attempted to regain her affection, to persuade to more gentle ways; or that he so much as attempted to reason with her before filing the libel and preparing to drag his domestic infelicities into the light of publicity.

The libel does not show how, by what management, acts, language, deportment, and treatment of him, the libellee endeavored to estrange the children from him, nor does it state that the attempt was successful as to either child. It does not disclose how his health was affected, whether favorable or unfavorably, or to what extent; it does not state whether such effect was lasting or temporary.

If we assume that the libellant intended to charge that she withheld from the marital connection, and did so without just cause, though we admit nothing of the sort, and we do not accept a possible intention to allege, for an adequate allegation, no sufficient cause for divorce would then be alleged. *Cowles* v. *Cowles,* 112 Mass. 298; 1 Bishop on Mar. & Div. § 338, and cases cited.

The effect upon the health, or the apprehended danger must be adequately serious; it is not every slight and transient effect, even if it be physical, which will justify the extreme remedy for divorce. 1 Bishop on Mar. & Div. § 717.

All the cases concur in holding that the apprehension of danger must be reasonable, or, as Lord STOWELL stated it in *Evans* v. *Evans,* before cited, "it must not be an apprehension arising merely from an exquisite and diseased sensibility of the mind."

In considering this case we ask the court to compare the acts necessarily admitted by the demurrer to this libel with the facts

proved in almost any one of the reported cases on the subject, and especially with the facts proved in the case of *Kelly* v. *Kelly*, Law Rep. 2 Pr. & Div. 31 ; S. C. on appeal same vol. 59.

HASKELL, J.    The General Court of Massachusetts, by act of March 16, 1786, § 3, enacted, " that divorce from bed and board may and shall be granted for the cause of extreme cruelty in either of the parties."    To this act was added by act of 1810, c. 119, two other causes for divorce, utter desertion, and the witholding of support from the wife.

The legislature of Maine, by act of February 10, 1821, Smith's laws, vol. 1. c. 71, § 3, enacted the Massachusetts statute, " that divorce from bed and board may and shall be granted for the cause of extreme cruelty in either of the parties, or whenever any husband shall utterly desert his wife, or shall grossly, or wantonly and cruelly neglect, or refuse to provide suitable maintenance for her, being of sufficient ability thereto."    This act was not wholly repealed until 1883.

By acts of March 3, 1829, c. 440, and of March 6, 1830, c. 456, wilful desertion for five years was added to the then few existing causes for divorce *a vinculo,* and utter desertion was omitted from the revision of 1841 as a cause for divorce *a mensa et thoro.*

By act of August 7, 1849, a divorce *a vinculo* was authorized, " when a justice of this court, in the exercise of a sound discretion, may deem the same reasonable and proper, conducive to domestic harmony, and consistent with the peace and morality of society ;" and by act of 1863, c. 211, § 2, the court was required to grant a divorce for three years' wilful desertion, without cause.

These enactments of our legislature remained in force, until repealed by the act of March 13, 1883, c. 212, which provided, that divorces *a vinculo* shall be decreed for (1) adultery, (2) impotence, (3) extreme cruelty, (4) utter desertion continued for three consecutive years next prior to the filing of the libel, (5) gross and confirmed habits of intoxication, (6) cruel and abusive treatment, (7) on the libel of the wife, when the husband,

being of sufficient ability, grossly, or wantonly, cruelly refuses, or neglects to provide suitable maintenance for her.

A review of this legislation shows plainly enough, that the act of 1883 was intended to limit and restrict divorce to specified causes, and to prohibit the methods touching it, that had prevailed for more than thirty years. Extreme cruelty had been a cause for divorce *a mensa et thoro* in this state, and in Massachuuetts, for almost a century; and when the act of 1883 made extreme cruelty a cause for divorce, *a vinculo*, instead of *a mensa et thoro*, it may fairly be presumed that the same meaning was intended to be applied to the phrase in the new statute, that had always been adjudged to it in the old statute.

Extreme cruelty, as used in the divorce statute of 1786, was defined by the court of Massachusetts to mean, "personal violence," *Warren* v. *Warren*, 3 Mass. 321, and that interpretation of the statute has been adhered to by the courts of that state hitherto. *Hill* v. *Hill*, 2 Mass. 150; *French* v. *French*, 4 Mass. 587; *Ford* v. *Ford*, 104 Mass. 198; *Bailey* v. *Bailey*, 97 Mass. 373; *Lyster* v. *Lyster*, 111 Mass. 327. This provision after judicial construction was enacted by the legislature of Maine in 1821, and declared to be a cause for divorce, *a vinculo*, by the act of 1883, without intimation that its adjudged meaning should be changed, so that extreme cruelty, as the (3d) cause for divorce, in the act of 1883, means "personal violence," intentionally and wantonly inflicted, so serious as to endanger "life, limb, or health," or to create reasonable apprehension of such danger.

This meaning of the (3d) cause for divorce, in the act of 1883, makes plain the intention of the Legislature, in providing the (6) cause for divorce in the act to be cruel and abusive treatment; words of wider significance, and of more comprehensive meaning. This phrase does not necessarily imply physical violence, though it may include it. Words and deportment may work injury as deplorable as violence to the person. "I will speak daggers to her, but use none," says Shakespeare. Temperament and character so widely differ, that conduct cruel to one, might scarcely annoy a more callous nature. Having in

mind the sacred character of the marital relation, and its influence on the happiness and purity of society, as well as upon individuals, not overlooking considerations, that may not be freely discussed, each particular case must be judged of by its own particular facts and circumstances.

Divorce should not be a panacea for the infelicities of married life ; if disappointment, suffering, and sorrow even be incident to that relation, they must be endured.    The marriage yoke, by mutual forbearance, must be worn, even though it rides unevenly, and has become burdensome withal.    Public policy requires that it should be so.    Remove the allurements of divorce at pleasure, and husbands and wives, will the more zealously strive to even the burdens and vexations of life, and soften by mutual accommodation so as to enjoy their marriage relation.

Deplorable as it is, from the infirmities of human nature, cases occur where a wilful disregard of marital duty, by act or word, either works, or threatens injury, so serious, that a continuance of cohabitation in marriage cannot be permitted with safety to the personal welfare and health of the injured party.    Both a sound body and a sound mind are required to constitute health. Whatever treatment is proved in each particular case to seriously impair, or to seriously threaten to impair, either, is like a withering blast, and endangers "life, limb, or health," and constitutes the (6) cause for divorce in the act of 1883.    Such is the weight of authority.    *Bailey* v. *Bailey*, 97 Mass. 373 ; *Lyster* v. *Lyster*, 111 Mass. 327 ;  *W.* v.  *W.* 141 Mass. 495 ; *Evans* v. *Evans*, 1 Hagg. Con. 35 ; *Kelly* v. *Kelly*, 2 L. R. Prob. & Div. 31 ; *Kennedy* v. *Kennedy*, 73 N. Y. 369 ; *Morris* v. *Morris*, 14 Cal. 76 ; S. C. 73 Am. Dec. 615 ; and cases cited in note.

The case comes up on demurrer to the libel.    That charges, that the libellee has for a long time refused her bed to the libellant, and has invaribly slept apart from him without cause ; that she has continuously charged him with infidelity without cause, and this too, in the presence of their minor children, and sometimes in the presence of their servant ; that she has sought to alienate the affections of their children from him ; that she has

studiously avoided his society; that she has lost all interest in his welfare, and ceased to perform any wifely act; that his home has thereby become so unhappy, that existence in it is insupportable, whereby his peace of mind has become so affected, as to endanger his health.

No one allegation in the libel has been held to constitute legal cruelty, save that of infidelity. That charge when falsely and maliciously made has been often held to constitute cruelty, when accompanied by acts of violence, or reasonable apprehension thereof. But few cases have been found, that hold the false charge of infidelty to be legal cruelty, and these were mostly adjudged in western states. If the legislature had intended by the act of 1883 to constitute the false charge of adultery a cause for divorce when taken by itself, it is reasonable to suppose, that it would have so named it, inasmuch as the act of adultery is declared to be such cause.

The libel charges the effect of the combined allegations to be physical injury. The demurrer is general, and does not reach a want of particularity in such allegation, so that, such effect must be considered as flowing from the preceding allegations in the libel; nor is it a conclusion, that cannot be said to necessarily, or logically flow therefrom, because it is the averment of a fact, that may, or may not result from the conduct of the libellee charged in the libel. Here the fact is averred to exist, that of conduct which seriously injures, or threatens to injure and impair physical health. The libel is sufficient, and according to the stipulation, the libellee should answer below, where it may be determined, whether libellee's conduct, in this particular case, has so affected the libellant, as to amount to cruel and abusive treatment.

*Exceptions sustained. Libel adjudged good.*

PETERS, C. J., WALTON, DANFORTH, EMERY and FOSTER, JJ., concurred.