## Massey v. Massey.

[No. 6,148. Filed April 12, 1907. Rehearing denied June 26, 1907. Transfer denied October 17, 1907.]

1. DIVORCE.—*Cruel and Inhuman Treatment.*—*What is.*—To constitute "cruel and inhuman treatment" it is not necessary that the act or acts complained of shall consist of physical violence. p. 409.

2. SAME.—*Cruel and Inhuman Treatment.*—*Definition.*—The question of cruel and inhuman treatment is usually determined from the particular facts of each case, and the definitions thereof are usually negative rather than affirmative. p. 409.

3. SAME.—*Cruel and Inhuman Treatment.*—*Condition of Parties.*— Whether alleged conduct is "cruel and inhuman" should be determined from a consideration of the character of the parties and of their physical, social, intellectual and moral natures. p. 409.

4. SAME.—*Cruel and Inhuman Treatment.*—*Charge of Adultery.*— The wife's false charge of her husband's adultery, widely circulated in the community, as well as the husband's false charge of

the wife's adultery, may constitute "cruel and inhuman treatment" sufficient to authorize the granting of a divorce. p. 410.

5. PLEADING.—Complaint.—Divorce.—Cruel and Inhuman Treatment.—A complaint for divorce by the husband showing that the wife continuously accused him falsely of being unchaste; that she endeavored to destroy his business, and scolded him for using her money therein; that she was petulant, irritable and constantly complaining, and that she was abusive, scornful, cold, and indifferent as to his happiness, states a cause of action and sufficiently shows the endangering of the husband's physical well-being. p. 410.

From Gibson Circuit Court; Oscar M. Welborn, Judge.

Suit by Hiram B. Massey against Permelia E. Massey. From a decree for defendant, plaintiff appeals. Reversed.

Thomas Duncan, for appellant.

Henry A. Yeager, for appellee.

HADLEY, J.—This is a suit instituted by appellant against appellee for divorce. Appellant filed an amended complaint, to which appellee filed a demurrer, which demurrer was sustained. Appellant refusing to plead further, judgment was rendered against him. The ruling of the court on the demurrer is the only error assigned. The complaint, after stating the marriage and the residence of the parties, avers that they separated January 12, 1905; that during the time of their marriage appellee continuously charged appellant with being untrue to her and of being an unchaste man; that she stated to numerous good citizens of the community that he was untrue to her and unchaste, all of which she knew to be false; that she endeavored to destroy his business, and constantly upbraided him for using her money therein; that she was petulant, irritable, and constantly complaining; that she frequently asserted she cared nothing for him, for his home, or his business, and refused to take any interest in his home, when able to do so, and also, when able to do so, refused to prepare the daily meals for him and his servants; that she read frivolous literature, to the neglect of her household duties; that she, for a long time prior to

and on the day of separation, was cold, abusive, scornful, and indifferent to the happiness of the appellant; that by reason thereof she kept appellant in continual distress, and the trouble destroyed his peace of mind and broke up his home.

If this complaint states facts sufficient to constitute grounds for a divorce, it must be under the fourth clause of §1044 Burns 1901, §1032 R. S. 1881, which is as follows: "Cruel and inhuman treatment of either party by the other." That there can be cruel and inhuman treatment without physical violence is now so well settled that citation of authorities is useless. What constitutes cruel and inhuman treatment must be determined by the facts of the given case. As was said in the case of *Kelly* v. *Kelly* (1883), 18 Nev. 49, 1 Pac. 194, 51 Am. Rep. 732: "In considering extreme cruelty as a ground of divorce, courts have cautiously given it negative, rather than affirmative, definitions. The difficulty in giving it an affirmative definition arises from the fact that cruelty is a relative term; its existence frequently depends upon the character and refinement of the parties, and the conclusion to be reached in each case must depend upon its own particular facts. 'We do not divorce savages and barbarians because they are such to each other,' said the supreme court of Pennsylvania, in *Richards* v. *Richards* [1860], 37 Pa. St. 225. 'We can exercise no sound judgment in such cases [divorce cases] without studying the acts complained of in connection with the character of the parties, and for this we want the common sense of the jury rather than fixed legal rules.' *Richards* v. *Richards, supra.*" Mere cold neglect has been held by our Supreme Court to be cruel and inhuman treatment, in the case of *Rice* v. *Rice* (1855), 6 Ind. 100, wherein the court say: "We may remark of this instruction that it seems to contemplate an entirely physical, sensual view of the marriage relation; and if that relation has no aim to the social happiness and mental enjoyments

of those united in it, the instruction should have been given. But if it is otherwise, if it be true that we are possessed of social, moral, and intellectual natures, with wants to be supplied, with susceptibilities of pain and pleasure; if they can be wounded and healed, as well as the physical part, with accompanying suffering and delight, then, we think, that conduct which produces perpetual social sorrow, although physical food be not withheld, may well be classed as cruel, and entitle the sufferer to relief.''

False charges of infidelity by a wife of a husband, widely circulated in the community, may cause the keenest suffering to the husband, in comparison to which blows would 4. be insignificant. And where, as averred here, these false statements are persistent, continuous, and are coupled with coldness, neglect, lack of interest in family affairs, aggressive action against his means of livelihood, irritability, petulancy and scorn, to the extent of breaking up his home, we can well perceive that they might produce the depths of distress and wretchedness that would naturally cause physical impairment. Kelly v. Kelly, supra; Holyoke v. Holyoke (1886), 78 Me. 404, 6 Atl. 827; Whitmore v. Whitmore (1882), 49 Mich. 417, 13 N. W. 800; Carpenter v. Carpenter (1883), 30 Kan. 712, 2 Pac. 122, 46 Am. Rep. 108; McGee v. McGee (1904), 72 Ark. 355, 80 S. W. 579; Spitzmesser v. Spitzmesser (1901), 26 Ind. App. 532. It is well settled that the false charge of adultery by a husband against his wife is grounds for divorce under the charge of cruel and inhuman treatment. Graft v. Graft (1881), 76 Ind. 136; Shores v. Shores (1864), 23 Ind. 546. And, in reason, a wife's like accusation against the husband should be no less available to him in his suit for her cruelty. 1 Bishop, Mar., Div. and Sep., §1636; §1044 Burns 1901, §1032 R. S. 1881. In a suit by the husband for divorce on account of cruel treatment, where no actual violence 5. is averred, it must clearly appear from the facts in the case that the acts of the wife have rendered the

continuance of the marital relation so intolerable to the husband as to endanger his physical well-being. The averments of the complaint show that such a condition would exist under the facts therein averred, with a man of ordinary temperament, standing and self-respect. Appellee relies upon the case of *McAlister* v. *McAlister* (1888), 71 Tex. 695, 10 S. W. 294. From the reasoning in this case, it will appear that the statutes of Texas. and the decisions thereunder provide a different rule in cases of this character than that which obtains in this State, and we do not think it should be of controlling force. The court bases its decision upon the following statement: "Wisely or not, our statutes do not make occasional acts of adultery on the part of the husband a cause of divorce when sought by the wife. Otherwise, when the husband asks divorce from the wife taken in adultery."

Cause reversed, with instructions to the lower court to overrule the demurrer to the amended complaint.

Myers, C. J., Roby, P. J., and Watson, J., concur. Comstock and Rabb, JJ., dissent.

## DISSENTING OPINION.

RABB, J.—I cannot concur with the view expressed in this cause, that the appellant's complaint is sufficient. While the contract of marriage is a civil contract, when once executed the relation it creates is by no means a mere civil obligation. As is well said in the very able opinion delivered by Robinson, J., in the case of *Eikenbury* v. *Eikenbury* (1904), 33 Ind. App. 69: "The marriage executed, regulated as it is by law upon principles of public policy, is an institution of society in which the State is deeply concerned. The State itself regulates it because the State has an interest in maintaining the family relation." The same judge, quoting from. the case of *Noel* v. *Ewing* (1857), 9 Ind. 37, says: "It is preëminently the basis of civil institutions, and thus an

object of the deepest public concern. * * * It is a great public institution, giving character to our whole civil polity.'' As the marriage relation is one in which the public has a concern, a dissolution of that relation is one in which society is concerned. Any thing and every thing which tends to break down or destroy the marriage relation is of the highest concern to the State. Loose interpretation of the divorce laws of the State is an attack upon the institution of marriage. It tends to loosen the tie that binds husband and wife together, and is a blow at the family relation. Public policy, good morals, and the interest of society, alike demand at the hands of the court a strict construction of the divorce law. The matrimonial yoke, if galling at all, is, generally speaking, as galling to one of the parties as it is to the other; and when a divorce is granted to one of the parties to the inharmonious union the other is also relieved; and it is a matter of common knowledge, that, generally speaking, so far as the parties to the action are concerned, a divorce case is an *ex parte* proceeding, in which both plaintiff and defendant are not only willing but anxious that the decree be granted. It frequently happens that the defendant in a divorce proceeding voluntarily furnishes the means to carry on the suit. A divorce proceeding, while it is governed by the rules governing proceedings in civil cases so far as they are applicable, is not a civil case, and differs in essential particulars from civil actions. In civil actions the only parties in interest are the parties to the suit, the plaintiff and defendant. Their rights are the only rights that are to be considered. But in a divorce suit there are three interests to be considered, the interest of the plaintiff, the interest of the defendant, and the interest of society.

I hold that public policy requires that one who brings an action to dissolve the marriage relation shall, in his complaint, not only allege the wrongful acts of the defendant that show as between the plaintiff and defendant that he has grounds for divorce, but it must also affirmatively be made

to appear that, as between the State and the plaintiff, he is entitled to a decree of divorce. This can only be done by an averment that he himself is without fault. It has been held in numerous cases, and is undoubtedly the law, needing no expression from any court to confirm it, that where it appears that the plaintiff has committed matrimonial offenses it would be the duty of the court to deny the divorce, whatever may have been the guilt of the defendant. The statute in this State, making it the duty of the prosecuting attorney to appear and defend divorce cases in which default has been made, clearly recognizes the interest of the State in the proceeding. I maintain that public policy requires that in every divorce case the complaint shall affirmatively show, and the evidence prove, that the plaintiff is without fault. The complaint in this case not only fails to show that the appellant was not without fault himself, but, I think, it affirmatively shows that the domestic infelicity was in part due to his own wrongful conduct. One of the grounds of his charges against the appellee is that she was continuously and constantly upbraiding him for the employment of her money in his business. I think it is fairly to be inferred from this averment that the appellant had, by some means, obtained possession of the separate means of the appellee, and, without her consent, was wrongfully using it in his private business in a manner that met her disapproval, and that this was one, and perhaps the principal, ground of discord between the parties.

I therefore think that the court below was correct in sustaining the demurrer to the complaint.

PER CURIAM.—The petition for a rehearing is overruled.

## DISSENTING OPINION ON PETITION FOR REHEARING.

COMSTOCK, C. J.—The prevailing opinion in this cause holds that the complaint stated a cause of action against the wife for the cruel and inhuman treatment of her husband.

With due respect for the judgment of my brethren who join in that opinion I cannot concur therein.

The sufficiency of the complaint is the only question presented by this appeal. Cruelty between husband and wife is "such cruelty as causes injury to the life, limb, or health, or creates danger of such injury or a reasonable apprehension of such danger." Anderson's Law Dict. It is defined in 1 Bishop, Mar., Div. and Sep., §1531, as follows: "Cruelty is any conduct in one of the married parties which, to the reasonable apprehension of the other, or in fact, renders cohabitation physically unsafe, to the degree justifying a withdrawal therefrom."

In the same work (1 Bishop, Mar., Div. and Sep., §1652) the author restates the doctrine of cruel treatment as follows: "Matrimony contemplates a cohabiting or dwelling together of the parties, and thereon a mutual performance of the correlate duties which the law superinduces upon the marriage. And while one does his part, the other is not authorized to withdraw and live in separation. But neither the husband nor the wife can continue the cohabitation, with the due discharge of matrimonial duties, if in physical peril from the other. And whenever by reason of the other's fault the peril exists, the party put in peril is entitled to be judicially separated or divorced from the other. The creating of the peril, in whatever manner done, whether by blows, by threats, or by conduct producing mental anguish to the detriment of the physical health, or by any other means, is termed cruelty. And as the law does not concern itself about trifles, the cruelty must be of a magnitude serious, so as to be commensurate with the serious nature of suspending or dissolving the marriage relation. It may proceed either from the husband or from the wife. In the details of this doctrine, the particular character of marriage, the law's idea of the mutual rights and duties of husband and wife, the health of the respective parties, and all analogous things are to be taken into the account." The fourth cause for divorce,

under our statute, is "cruel and inhuman treatment of either party by the other." §1044 Burns 1901, §1032 R. S. 1881.

The general principles of the law are the same whether the suit be instituted by the husband or the wife. The wife is entitled to a divorce for the cruel and inhuman treatment of the husband; the husband for the cruel and inhuman treatment of the wife. But conduct which would be cruel to the one would not be to the other. In the application of the principles, regard must be had to the duties which the marriage relation has created—the physical conditions and temperament of the parties. The false charge of unchastity, made by a husband against his wife in the presence of third parties, is held by the courts to be cruel and inhuman treatment. It is sure to injure the life and health of a pure woman. A like charge against the husband is not so seriously regarded. It frequently fails to disturb his self-complacency. A husband convicted of adultery is not visited with the same consequences or punishment, morally or socially, as the wife for a like offense. Great writers on jurisprudence have given their opinion against granting divorces for the adultery of the husband. Montesquieu, Pothier, and D. Taylor all insist that prosecutions for this offense ought to be confined to the wife. Shelford, Mar. and Div., *395. Reference to the above-mentioned writers is made to show how differently the same conduct is regarded in persons of different sex and as tending to show the difference in the effect upon the health of the man or woman of a mere charge of this social sin. To say that husband and wife are equals in conjugal status, that in what they say or do they are alike affected, that a charge of unchastity against a man of the coarseness of fiber of the average man, would injure his life or health as it would that of the wife or mother, is, to put it mildly, unwarranted. The prevailing opinion is based upon the transparent fiction of the law that the status of the husband and wife is equal.

In *McAlister* v. *McAlister* (1888), 71 Tex. 695, 10 S. W.

294, the husband sued for a divorce upon the ground of alleged excesses, cruel treatment, and outrages on the part of the defendant. The first and second of these specifications are as follows: "(1) That for six or seven years appellee has repeatedly harassed him with studied insults, and publicly accused him of adultery with various women. (2) Appellee publicly and falsely accused him of adultery with one [naming her], his neighbor's wife; that the accusation caused scandal in the neighborhood, and was calculated to wound appellant's feelings, and, in fact, came near causing a personal difficulty with the woman's husband; that, when threatened with a suit for slander, the appellee voluntarily went before a notary public and made affidavit that the charge was false, and made with wicked and slanderous intent, and that said affidavit was printed and published to the world, bringing shame and reproach on appellant, injuring his feelings, and disgracing his little children." The section of the statute upon which the petition was based reads as follows: "1. Where either the husband or wife is guilty of excesses, cruel treatment or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable." 1 Sayles' Tex. Civ. Stat., Art. 2,977. In the course of the opinion the court said: "The ordinary meaning of cruelty in actions for divorce is that the act endangers or threatens the life, limb or health of the aggrieved party. To this, in our courts, is added any outrage upon the feelings inflicting mental pain or anguish. * * * There are no allegations in the petition showing that from the character, calling, or occupation of the plaintiff, or from his temperament, or from any other subjective cause, the charges would be calculated to, or did, produce mental suffering or anguish beyond the ordinary effect likely to be produced. Cases might exist upon such allegations showing the special effects of the charge of adultery upon the husband, and that the mental suffering caused thereby was such as to render the living together insupport-

able where a divorce should be allowed.    But taking the gravity of the offense charged when made against the wife with the comparative levity of it when against the husband, we are of the opinion that the mere charge of adultery on the part of the husband made by the wife, though the charge be often repeated and be false, is not, under our laws, a sufficient ground for divorce.''

But apart from the expressions of the courts, it must be accepted as of common observation, that such false charge against a man is trivial in its effects, compared with the utter ruin it may cause a woman.    Cruel treatment, identical in its manifestations, was involved alike in the case of *McAlister* v. *McAlister, supra,* and the case at bar.    ''Cruel treatment'' in the Texas statute is substantially equivalent to ''cruel and inhuman treatment'' in our statute.    The complaint alleges that the defendant was continuously charging the plaintiff with being untrue to her; that to numerous good citizens of the community in which they lived, she charged that he was unchaste, well knowing, at the time of so doing, that her statements were false; that at the time of their marriage he was engaged in a profitable business with his brother in farming and stock raising; that she endeavored to destroy his business, and constantly upbraided him for using her money therein; that she was petulant, irritable, constantly complaining, and frequently asserted to him that she cared nothing for him, his home, nor his business; that she refused to prepare daily meals for the plaintiff and his servants when she was able to do so; that she wasted her time in reading frivolous literature, to the neglect of her household duties; that for a long time prior to the date of their separation she was cold, abusive, and scornful to plaintiff and indifferent to his happiness.    It is averred that the defendant complained of the use of her money in his business.    Whether she derived any benefit therefrom is not stated.    It is not likely that the plaintiff

would omit, in this connection, the statement of any fact vindicating his liberality or business sagacity. It might, therefore, fairly be inferred that she did not derive any benefit from plaintiff's use of her money. This ground of complaint, on her part, would not seem to be unreasonable. Very few women have the grace quietly to submit to the appropriation by their husbands of their separate estate. Her irritability may have been largely due to the use of her property without her consent. This fact doubtless was given due weight by the trial court. That she refused to cook for the hired servants perhaps only emphasizes her just resentment caused by the plaintiff's faults and delinquencies. It will not be presumed that a wife will causelessly give her husband unnecessary pain. The complaint should contain some averment overcoming this presumption—an allegation that the plaintiff was without fault, or some equivalent averment. It does affirmatively appear that the wife had at least one grievance to which we have made reference. The omission from the complaint that the alleged misconduct of the wife was not defendant's fault, is fatal. This is true from the very nature of the action. "Matrimony," as said by Bishop, "contemplates * * * a mutual performance of the correlate duties which the law superinduces upon the marriage. And while one does his part, the other is not authorized to withdraw and live in separation." 1 Bishop, Mar., Div. and Sep., §1652. No case is presented for the consideration of the court, until it appears affirmatively from the complaint that one seeking an annulment of the marriage bond is blameless. Apart from the charge of unchastity, the grounds for divorce, being preferred by a man, appear frivolous. By one respectable court, at least, that charge has been held insufficient, but that charge is made only in the complaint before us by way of recital. Plaintiff does not, except by inference and recital, deny its truth. The complaint states that there is living, as the fruits of the marriage, one

daughter, born March 27, 1901. With whom the little girl lives or to whose care her future shall be entrusted, plaintiff is silent. If he desired that she should be near him that he might give her a father's protection, or if separation from her would cause him grief, he gives no sign. While this omission does not indicate a temperament especially sensitive to paternal affection, it does tend to show that he is willing to commit his child to the keeping of his wife, who he alleges has caused him continual distress and trouble and destroyed his peace of mind, thus in a measure discrediting his charges.

Courts should bear in mind that the marriage contract is peculiar and, in various respects, differs from others. It is for life, the parties having no power by mutual consent to dissolve it. Society is interested in the fidelity with which it should be observed. It can only be annulled by judicial tribunals especially clothed with power to do so. Where the husband asks for a divorce, and especially upon the grounds of cruel and inhuman treatment by the wife, his cause should be a clear one. The alleged conduct of the wife does not bring the grievances complained of within the definitions of cruel and inhuman treatment. In the Indiana cases cited in the original opinion (*Rice* v. *Rice* [1854], 6 Ind. 100, *Shores* v. *Shores* [1865], 23 Ind. 546, and *Graft* v. *Graft* [1881], 76 Ind. 136), the question of the sufficiency of the complaint is not raised. In *Spitzmesser* v. *Spitzmesser* (1901), 26 Ind. App. 532, the facts averred are so dissimilar to those in the complaint under consideration that the ruling cannot aid us in the case at bar. In *McGee* v. *McGee* (1904), 72 Ark. 355, 80 S. W. 579, *Carpenter* v. *Carpenter* (1883), 30 Kan. 712, 2 Pac. 122, 46 Am. Rep. 108, and *Whitmore* v. *Whitmore* (1882), 49 Mich. 417, 13 N. W. 800, the sufficiency of the complaint is not questioned. The proposition, that the complaint should aver that the complaining party is not the cause of the grievances of which

he complains, is not denied in any of the cases cited. The nature of the marriage contract makes this averment necessary in any proceeding to annul.

The trial court correctly sustained a demurrer to the complaint and the petition for rehearing should be granted and the judgment of the lower court affirmed.

Rabb, J., concurs.