STURGIS, Chief Judge.
The defendant husband appeals from a final decree granting separate maintenance to the wife and denying his counterclaim for divorce.
In answer to the complaint, which charged that appellee lived apart from appellant through his fault, that he failed to adequately support her, and that he was guilty of extreme cruelty, appellant denied the charge of extreme cruelty, denied that he withheld adequate support, asserted that appellee lived separate and apart through her own fault, and asserted that her acts caused the conduct of which she complained. He incorporated in the answer a counterclaim for absolute divorce on the grounds of desertion and extreme cruelty and appellee filed a reply denying the material allegations thereof.
The parties had been married approximately 29 years when the wife on April 23, 1962, filed this suit for separate ma-inte- *818 nance. The husband was 52 years of age and the wife 51. For over 20 years he had been employed as a Pullman conductor, necessitating absence from his home in Jacksonville for three days out of each week. His gross monthly salary was $585.-10. The wife, who is a registered nurse, was for some time during recent years employed by a physician on a full-time basis, but for a while prior to filing suit had been working only part time for a monthly salary of $78.20.
As grounds for reversal the husband contends, inter alia, that the evidence is inadequate to support the decree awarding separate maintenance, that it conclusively establishes his counterclaim for absolute divorce on the ground of cruelty, that under the facts and circumstances of this case the chancellor applied an erroneous rule of law to the facts in preserving the marital ties, and that the trial court erred in denying the husband’s motion for continuance of the hearing on the proofs in order to enable him to procure the attendance of a certain witness in his behalf. After careful review of the record on appeal, we hold that each and every of these contentions is without merit. In view of our conclusions on other points of law presented by the appellant husband and hereinafter discussed, it would serve no useful purpose to elaborate upon the above phases of the appeal.
The essential facts are in the main uncon-troverted : In the latter part of 1959 appellant apparently lost his ability to carry on sexual relations with appellee. At her suggestion he sought medical help and was given hormone injections over a period of twenty weeks. It seems that between the time of the onset of said incapacity until he quit the family home the appellee in private teased or- — as appellant characterizes it— "“taunted” him by calling him “Lover” and “Lover Boy.” In April of 1961 appellee received an anonymous letter stating that appellant was carrying on an extra-marital affair with a woman in St. Petersburg, Florida, where at that time he maintained living quarters incident to his work. This led her to accuse him of infidelity and resulted in marital strife. One week after the letter was received the husband abandoned the family home and the parties have not since cohabited as husband and wife. The record indicates continued love of the wife for her husband, her willingness to forgive his transgressions, and a desire on her part to resume the marital relation.
The evidence is somewhat conflicting on the question of marital strife between the parties. On the issue of non-support, the appellee’s proofs reflect that when the separation occurred in April of 1961, appellant gave her a check for $50 and thereafter, through March of 1962, sent her $100 each month, except that in August 1961 he sent only $50 and in October 1961 sent nothing; further, that until March 1962 he paid all household bills forwarded to him by appel-lee. It is undisputed that at the time of separation there was a joint checking account of less than $100 which the wife closed out on advice of counsel, and that there was also a joint savings account with a balance of $2,614.05 against which she made withdrawals in March 1962 totaling $200.
On the question of whether the wife sustained the charge of extreme cruelty, suffice it to say that on cross-examination the husband admitted that on the night that he “told her * * * [he] was going to walk out,” he for the first time informed her that on Saturday night of Thanksgiving weekend in 1960 he went to Ocala, Florida, and spent the night with a female companion. His brief on this appeal casually dismisses this as being an isolated act provoked by the appellee, though in what particular it is not made clear. He equates the escapade to a scientific test for the purpose of determining whether or not the hormones produced the desired miracle. We do not understand that the law of domestic relations has afforded that sort of excursion to either spouse.
The chancellor found the equities to be with the plaintiff wife and against the defendant husband, and that his earnings are *819 sufficient to enable him to provide for the support of his wife and to maintain himself. He adopted the following philosophy of the Supreme Judicial Court of Maine in Holyoke v. Holyoke, 78 Me. 404, 6 A. 827-828, as being relevant to this case:
“Divorce should not be a panacea for the infelicities of married life. If disappointment, suffering, and sorrow even be incident to that relation, they must be endured. The marriage yoke, by mutual forbearance, must be worn, even though it ride unevenly, and has become burdensome withal. Public policy requires that it should be so. Remove the allurements of divorce at pleasure, and husbands and wives will the more zealously strive to even the burdens and vexations of life, and soften by mutual accom[m]odation, so as to enjoy their marriage relation.”
The chancellor no doubt entertained the notion and hope, as is the policy of the law, that these former sweethearts might rekindle the spark of marital bliss.
The final decree authorized appellee to live separate and apart from appellant, ordered the sum of $850 to be withdrawn from the mentioned joint savings account and paid to appellee’s solicitors of record for their fees for services on her behalf in this cause, authorized an amount not exceeding $850 to be drawn from said account by the defendant husband to pay the fees of his solicitor of record herein, ordered that all costs of the proceeding, whether of the plaintiff or the defendant, be paid from said account, and directed that any sum then remaining in the account be divided equally between the parties. Obviously, the remainder for division between the parties is a negligible amount. It was further decreed that appellee have the exclusive use and occupancy of residential property owned by the parties at 1362 Monticello Road, Jacksonville, Florida, together with all household furniture and effects therein, and appellant was required to forthwith transfer title of a 1961 Buick automobile to appellee and to pay appellee the sum of $225 per month as alimony.
In addition to the hereinabove mentioned grounds for reversal, appellant contends (1) that the evidence shows without contradiction that he did not at any time withhold adequate support from the appellee and that it was therefore error to award separate maintenance under Section 65.10, Florida Statutes F.S.A.; and (2), assuming arguendo that an award of separate maintenance was proper, the chancellor was nevertheless without power to order him to convey to appellee the title to his automobile. While we are not unmindful that lapse of time and other practical factors may render our conclusion on these points of little if any practical value to the parties involved, the applicable law supports appellant’s position in these particulars.
As stated, it is uncontradicted that from the date of separation until one month prior to the filing of suit appellant paid all household bills forwarded to him by appellee and in addition sent her an average of $80 per month through March of 1962; moreover, appellee withdrew to her use the balance of their joint checking account of slightly less than $100, and there was available to her use the sum of $2,614.05 in their joint savings account and she actually made two substantial withdrawals from the savings account for household expenses.
If at the time suit for separate maintenance is instituted the husband is providing support, commensurate with the financial condition and circumstances of the parties, the action is not maintainable. Close v. Close, 158 Fla. 636, 29 So.2d 625 (1947). In Egland v. Egland, 92 So.2d 647 (Fla.1957), the wife in a suit for separate maintenance testified that she had not received any money from her husband “within the last few months,” but admitted that within two months prior to suit she had with his consent withdrawn the sum of $8,500 from a joint checking account of the parties. In reversing a decree awarding separate maintenance, the Florida Supreme Court pointed *820 out that the amount withdrawn would have maintained the wife and several children well beyond the time of filing suit. Similarly, the facts in the instant case show that when this suit was filed there was available to the use of appellee funds provided by appellant dn an amount sufficient to sustain her well beyond the filing date. Under such circumstances this action was not maintainable.
On the remaining question, it is well settled that in a suit for separate maintenance the objective of the action is for the wife to establish that she has grounds for divorce, is living apart from her husband, and is in need of support which the husband is financially able to provide but is withholding from her. The statutory proceeding for separate maintenance does not contemplate or permit a resolution of their interest in jointly-held property or in property held by the husband in which the wife claims an interest. It may allocate property of the husband to the exclusive use of the wife but it does not permit the vesting in her of title thereto. Naurison v. Naurison, 108 So.2d 510 (Fla.App.1959); Bredin v. Bredin, 89 So.2d 353, 61 A.L.R.2d 942, (Fla.1956).
Realizing that the chancellor made a conscientious effort to equitably settle the issues, it is with reluctance that we are constrained to hold, in accordance with the established law, that on the showing made by the evidence in this case the plaintiff wife was not, at the time of institution of this suit, entitled to maintain the same, and for that reason the final decree appealed must be reversed. We have ventured to state our views with respect to the other matters presented by the appeal in the hope that it may prove of some benefit to the parties in projecting their future course of action.
For the reasons stated, the decree appealed must be and it is
Reversed.
WIGGINTON and RAWLS, JJ., concur.