CHARLES A. BONNEY *vs.* LOTTIE E. BONNEY.

Plymouth. November 28, 1899. — November 29, 1899.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Libel for Divorce — Acts not amounting to Cruel and Abusive Treatment.*

At the trial of a libel for divorce for cruel and abusive treatment within the meaning of Pub. Sts. c. 146, § 1, it appeared that the libellee failed to stay at home and take care of her husband or to consent to his hiring a nurse or housekeeper so to do, threatening to leave him if he did hire one, that he was not dependent solely upon his wife, that he was under the care of a physician and had the money with which to procure nursing and proper food, which food he did in fact procure when he got up from his sick bed by boarding with the occupants of another tenement in the same house, and that he afterwards went away in search of health. There was no pretence that the hiring of a nurse could not have been done through the physician. *Held*, that under these circumstances the fact that the libellant's health was temporarily injured by the libellee's failure to comply with the doctor's orders as to the libellant's diet and medicines was not sufficient.

LIBEL, for divorce on the ground of cruel and abusive treatment. Hearing in the Superior Court, before *Bond,* J., who ruled that the conduct of the libellee did not constitute cruel and abusive treatment, and, at the request of the libellant, reported the case for the determination of this court. The facts appear in the opinion.

*P. A. Aubertin & R. O. Harris,* for the libellant.

No counsel appeared for the libellee.

LORING, J. We are of opinion that the acts of the libellee did not amount to cruel and abusive treatment within the mean-

ing of Pub. Sts. c. 146, § 1. The libellant testified: "There was nobody else in the family to administer medicines except my wife; she gave me medicines when she was there; she did not remain at home all the time; she went to the theatre and dances; she was at work also. I was of financial ability to procure a servant. I endeavored to procure a nurse or housekeeper to wait upon me. I wanted to; she said if I did she would leave the place." Another witness for the libellant testified that the libellee "was off on her wheel sometimes; she could not do as she could if she stayed at home."

Without doubt the libellee failed to perform the duties of a wife in failing either to stay at home and take care of her husband, or to consent to her husband hiring a nurse or housekeeper so to do. But the libellant was not dependent solely upon his wife. He was under the care of a physician, and had the money with which to procure proper food and nursing. It appears that he did in fact procure the proper food when he got up from his sick bed, by boarding with the occupants of another tenement in the same house, and that he afterwards went to Jamaica in search of health. If he was not content with the care his wife gave him while he was sick in bed his remedy was to hire a nurse, even if his wife wrongly threatened to leave his tenement if he did so. There was no pretence that this could not have been done through the physician in attendance.

Under these circumstances the fact that the libellant's health was temporarily injured by the libellee's failure to comply with the doctor's orders as to the libellant's diet and medicines is not sufficient. Her action in that respect may in one sense be said to be cruel, and the libellant may be said to have been abused by her. But it is not such cruel and abusive treatment as under the circumstances of the libellant will cause injury to his health or create danger of such injury, or reasonable apprehension of such danger, if the parties continue to live together; and nothing less will make out a case of divorce on this ground. *Bailey* v. *Bailey*, 97 Mass. 373, 380, 381. *Lyster* v. *Lyster*, 111 Mass. 327, 328, 329.

*Libel dismissed.*