EMMA F. SMITH *vs.* AUSTIN D. SMITH.

Franklin.　September 23, 1896. — October 24, 1896.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Divorce — Cruel and Abusive Treatment — Evidence — Condonation.*

It is within the discretion of the judge at the trial of a libel for divorce, on the grounds of cruel and abusive treatment and extreme cruelty in the spring of 1893 and later, to admit evidence of bodily violence in the summer of 1892, so far as it bears on the question of animus.

An exception to the admission, at the trial of a libel for divorce on the ground of cruel and abusive treatment, of evidence that the libellee applied a certain epithet to the libellant, because not covered by a specification relating to cruel and abusive epithets, will not be sustained if the epithet is not so covered, the judge having subsequently ruled that no divorce could be granted under that specification.

At the trial of a libel for divorce on the ground of cruel and abusive treatment, it is within the discretion of the judge to exclude evidence, offered by the libellee, of persons who were neighbors of and saw the parties frequently, that they appeared to live happily together.

At the trial of a libel for divorce on the ground of cruel and abusive treatment, the libellee testified that he objected some to his wife being in company with A

because it made trouble; and the libellee's sister also testified to admissions of the libellant which tended to show a suspicious degree of intimacy between the latter and A., which called for explanation. A. was allowed to testify, in rebuttal, that there never had been anything improper in his relations with the libellant; that the parties dined at his house; and that he had had a conversation with the libellee since the filing of the libel, in which he made no complaint of the attentions of the witness to his wife. *Held*, that the evidence of A. was properly admitted.

Any condonation by a wife of her husband's cruelty is upon the explicit condition that he will thereafter treat her with conjugal kindness, and a breach of this condition revives the right to maintain a libel for divorce for the original misconduct; and such breach may be shown by evidence which would be insufficient to establish the principal charge.

If the judge who hears a libel for divorce on the ground of cruel and abusive treatment finds that all acts of the libellee prior to a certain date were condoned, and would not support the libel unless revived by subsequent misconduct of the libellee, evidence that, on that date, he abused and threatened the libellant and expelled her from their home at a late hour of the night will warrant the judge in finding a breach of the condition upon which the condonation was founded, and that such breach revived any right which the libellant had to maintain the libel for the original misconduct.

In a case of divorce no exception lies to this court in matter of fact.

LIBEL for divorce, filed August 31, 1895, upon the grounds of cruel and abusive treatment and of extreme cruelty. Trial in the Superior Court, before *Maynard*, J., who granted the divorce on the first ground assigned; and the libellee alleged exceptions, which appear in the opinion.

*W. H. Brooks*, for the libellee.

*D. Malone*, for the libellant.

LATHROP, J. The grounds alleged in the libel are cruel and abusive treatment and extreme cruelty, on or about April 1, 1893, and on divers other days and times between that day and August 28, 1895, and also on the last named day. Specifications were filed, which, omitting the first two, which were not sustained, were as follows. 3. Violence and personal injury to the libellant in March, April, and November, 1893, January, February, October, and November, 1894, January, February, April, May, July, and August, 1895, and at sundry other times. 4. Compelling the libellant to leave her home by threats and expulsion from same, on August 27, 1895, at a late hour at night. The justice who heard the case in the Superior Court granted the divorce on the ground of cruel and abusive treatment. We proceed to consider the exceptions, so far as they are now insisted upon.

1. In the early part of the libellant's testimony she was asked as to the disposition of her husband in the summer of 1892, and how he manifested it, and whether any blows were struck. These questions were allowed to be answered, against the libellee's exception. The last answer is the only one now objected to. This was to the effect that he kicked her on the body. We are of opinion that this exception should be overruled. It was merely preliminary matter, and was stated so to be by counsel when the first question was put. It was discretionary with the judge to admit it or exclude it, so far as it bore upon the question of animus. *Ford* v. *Ford*, 104 Mass. 198, 205. *Commonwealth* v. *Holmes*, 157 Mass. 233.

2. Martha B. Melcher testified that in the summer of 1893 the libellee called the libellant " a lazy good for nothing." The libellee objects that this is not covered by the first specification, which relates to cruel and abusive epithets. The epithet was certainly abusive, if not cruel; and, if not covered by the specification, it seems to us of so little importance, especially in view of the subsequent ruling of the judge that no divorce could be granted under the first specification, that we are of opinion that the exception should be overruled.

3. George A. Childs, a witness for the libellee, testified that he lived across the way from the parties to this action, and had lived there since their marriage, that he had seen them daily for the past few years, and had been in and out of their house almost daily, and had seen them together a great deal. The libellee then offered to show by this witness that the parties, from day to day, as he had seen them, were, or appeared to be, living happily together. The libellee also offered to show through other neighbors, who saw them frequently in visiting at their house, and saw them at picnics and parties, from 1893 until the latter part of August, 1895, what their demeanor was, — their manner; that there were acts of affection between them, and that they appeared to be living in happiness. All of this evidence was excluded; and the libellee excepted.

The acts of cruel and abusive treatment upon which the libellant relied to make out her case were all done within the house where she and her husband lived, and not in the presence of any of the persons offered as witnesses. The evidence offered

would not, therefore, tend directly to contradict the witnesses for the libellant. If it had been admitted, its only legitimate use would have been to furnish ground for an argument that a husband who behaved well to his wife in public would not be likely to behave ill to her in private. Such an argument, however, would be entitled to but little weight, if any. Common experience teaches that acts of violence are seldom committed by a husband upon his wife in public, and that his conduct in public is no criterion for his behavior toward her in the privacy of his own home. It seems to us that it was within the discretion of the justice who tried the case to admit or exclude the evidence offered.

4. William Nichols was called by the libellant in rebuttal, and was allowed to testify that there never had been anything improper in his relations with Mrs. Smith; that Mr. and Mrs. Smith had dined at his house; that he had had a conversation once with Mr. Smith since the filing of the libel, in which Mr. Smith made no complaint of the attentions of the witness to his wife. The libellee had previously testified that he objected some to his wife being in company with Nichols because it made trouble. Martha R. Ryther, a sister of the libellee, had also testified to admissions of the libellant, which tended to show a suspicious degree of intimacy on the part of Nichols and the libellant, which certainly called for explanation. We have no doubt that the evidence objected to was properly admitted.

5. The judge who heard the case found that all acts of the libellee prior to August 27, 1895, were condoned, and would not now support a libel unless revived by subsequent misconduct of the libellee; that the evidence relating to August 27, 1895, would warrant him in finding a breach of the conditions upon which the condonation was founded, and such breach would revive any right which the libellant had to maintain the libel for original misconduct.

There was evidence in the case in behalf of the libellant, tending to show that in April, 1893, the libellee struck her with his fist in the eye, knocking her down and blacking her eye; that in November, 1893, he threw a book at her, hitting her in the breast; that in the same month he threw a lighted lamp at

her, which hit her; that in the winter of 1893 and 1894 he threw cold water upon her while she was in bed, which caused her to take cold; that in January, 1894, he kicked her in the bowels; that in October, 1894, he slapped her face; that between January 1 and March 1, 1895, he pulled her out of bed, and dragged her around the floor by the hair; that in April, 1895, he threw an egg at her; and that on July 4, 1895, he threw a chair at her. While there was contradictory evidence on some of these matters, yet some were admitted to be true by the libellee, who said they were done in fun. In his own testimony he said: " I never struck her except in sport or in fun; we used to play a good deal together, kick each other, hit each other, throw water at each other, and scuffle some." Later on, he testified that on one occasion " I got a little mad and slapped her in the face with my hand." He also admitted pulling her out of bed, but said it was in fun.

How far the libellee's actions were mere bucolic pleasantries was for the judge who heard the evidence to say. We cannot revise his findings on questions of fact. *Morrison* v. *Morrison,* 136 Mass. 310.

The evidence as to what took place on August 27 is somewhat contradictory, but the judge had a right to believe the libellant's testimony, which was, in substance, that the family were invited to a neighbor's on the evening of that day; that only she and her daughter, six years old, went; that at ten, she and the neighbor's son came home together, leaving the daughter because it had been raining; that she went up stairs and kissed her husband, and this woke him up; that he got up and went down stairs; that he came back and attempted to throw the lamp at her, — a small hand lamp; that he called her vile names; that she was very much frightened; that he said, " You get out of the house this minute, I won't have you in here "; that he was very angry, and she was afraid of her life; that she begged for time to dress, and dressed herself, and he continued his threats; that he said, " You leave this house, and you need not bring a sheriff here to get your things, — I will murder any one that harbors you, — it is a wonder I don't shoot you "; that it was half past ten when he came up stairs; and that she then left and went to her mother's, where she had since remained.

The law upon the subject of condonation is well settled by the decisions of this court. In *Gardner* v. *Gardner*, 2 Gray, 434, 441, 442, it is said : " But any condonation by the wife of cruelty to her on the part of the husband is upon the explicit condition that he will hereafter treat her with conjugal kindness ; and any breach of this condition revives the right to maintain a libel for the original offence. . . . The breach of such condition may be shown, in cases of libel by the wife for cruelty, by evidence which would be insufficient to establish the principal charge."

This case was affirmed in *Robbins* v. *Robbins*, 100 Mass. 150, and it was held that where a husband, for a period of six weeks, beginning only a fortnight after the last act of cruelty proved, while living in the same house with his wife, wholly and continuously refused to speak to her, warranted the wife or the court in inferring that his smothered anger would break out again into acts of cruelty.

The case at bar is clearly within these cases.

*Exceptions overruled.*