FRANK W. FREEBORN *vs.* MARGARET J. FREEBORN.

Suffolk. January 27, 1897. — February 26, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, & KNOWLTON, JJ.

*Divorce — Cruel and Abusive Treatment — Acts and Words of Wife.*

If, in a libel for divorce for extreme cruelty and cruel and abusive treatment, it appears that, though the libellant was affected injuriously in his health to some extent by his wife's acts and words, she had no purpose to harm him in this manner, but in part was moved by what seemed to her good motives and by a desire for his success in life, and in part by her own nervous condition, she being in reality strongly attached to him and her feelings being affectionate, the decision of the justice dismissing the libel will be accepted as final.

LIBEL for divorce, filed March 16, 1895, upon the grounds of cruel and abusive treatment and of extreme cruelty. Trial in the Superior Court, before *Fessenden,* J., who ordered that the libel be dismissed, and the libellant alleged exceptions, in substance as follows.

The parties were married on April 2, 1873. Some years ago, after they had lived together pleasantly for many years, the libellee began to use toward the libellant occasional expressions, which increased in frequency until during the last year or two of cohabitation they became common, such as "fool," "idiot," "know-nothing," "no ambition," and "brute." On a few social occasions, at the houses of friends, the libellee called the libellant "fool'" and "idiot." She said to him on two such occasions that "he ought to have more ambition"; that "if he had, he would not be a mere schoolmaster, but would become a professor at Harvard College, and then would have a social position such as he ought to occupy." On another occasion she told him that he ought to elevate himself according to his talents, and that "if he would not be such a fool, he could associate with college professors, and not merely with bankers and brokers." On still another occasion she told him that if he would use his talents as he should, he could rise in the world, and "could have as nice a chair and as nice furniture as were in the room" where they were.

These expressions were used in the presence of third persons.

The libellant felt humiliated, but said nothing. After their return from a social call, the libellee said to him that he was a " vile wretch," and that " he had n't sense enough to know when he was insulted." What was referred to did not appear. Prior to and down to about April 3, 1893, on frequent occasions after the libellant had retired to bed at night, the libellee talked in a reproachful way to him, and also used the expressions " fool," " idiot," " know-nothing," and " vile wretch."

The libellant was a school teacher in Boston. The language used irritated him, but he suppressed his feelings. He lost sleep, and became affected nervously, in consequence of the libellee's said language and conduct, so that his school work was disturbed to some extent. But he kept on with his work.

The libellant, on April 3, 1893, separated from the libellee, and refused to live with her. He made ample provision for her separate support. She insisted that she should be allowed to live with him, and on one occasion she went to his room in the schoolhouse, and on several occasions to his sleeping apartments, for the purpose of persuading him to permit her to live with him. She wrote and sent letters to him, asking him to allow her to come to him. He refused. On one occasion he told her he would call a policeman to eject her from his apartments if she did not leave. The libellant was kind to the libellee while they lived together. There was nothing in his conduct which justified her language and conduct toward him. The libellee was strongly attached to the libellant. Her feelings toward him were affectionate. She was ambitious for him and for herself. She was nervous, and during the latter part of their cohabitation was affected by physical troubles, arising from her age, in ways which made her unreasonable in her language, and led to the use of the expressions quoted before, and to her conduct.

The libellee had no purpose to harm or injure the libellant, but in part was moved by what seemed to her to be good motives, and by a desire for his success in life, and in part by her nervous condition.

*B. N. Johnson*, for the libellant.

*S. W. Creech, Jr.*, for the libellee.

ALLEN, J. This case comes to us on a bill of exceptions, and the question is not whether, on the facts stated, the presiding

justice would have been warranted in granting a divorce, but whether, as matter of law, these facts gave the libellant an absolute right to a divorce. No doubt there may be such an habitual or frequent use of exasperating language as to warrant the granting of a divorce when injury to health follows. *Bailey* v. *Bailey*, 97 Mass. 373. *Holyoke* v. *Holyoke*, 78 Maine, 404. But when cruel and abusive treatment is charged, and the proof consists merely of words spoken, and these words contain no threat of actual violence, the purpose and intent of speaking them may be considered. *W—— v. W——*, 141 Mass. 495. In the present case it would seem that the libellee intended to sting the libellant's feelings, and her treatment may well have justified him in living apart from her. But there may be misconduct justifying separation for a while, which will not require the court to grant a divorce. *Lyster* v. *Lyster*, 111 Mass. 327. The facts found did not require the final step of granting an absolute divorce. Though the libellant was affected injuriously in his health to some extent by her acts and words, she had no purpose to harm him in this manner, but in part was moved by what seemed to her good motives, and by a desire for his success in life, and in part by her own nervous condition, she being in reality strongly attached to him, and her feelings being affectionate. The case is by no means so strong as *Kelly* v. *Kelly*, 2 P. & D. 31, 59, where a wife obtained a divorce for a course of too severe moral discipline; or as *Prichard* v. *Prichard*, 3 Swab. & Tr. 523, where a husband obtained a divorce on account of the abusive treatment of his wife, though in this instance there were also some blows, which he did not care to repel with force. In *Johnson* v. *Johnson*, 49 Mich. 639, a case having some resemblance to the present, a series of petty annoyances by the wife, accompanied with words of disparagement of her husband's common sense, were held not to entitle him to a divorce.

On the whole, the decision of the presiding justice must be accepted as final.

*Exceptions overruled.*