MARIETTA R. JEFFERSON *vs.* HERBERT P. JEFFERSON.

Middlesex.    March 25, 1897. — May 21, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Divorce — Cruel and Abusive Treatment — Revival of Cause of Divorce after Condonation.*

At the hearing on a libel for the divorce of a wife from her husband on the ground of cruel and abusive treatment, there was evidence that the libellee had inflicted physical violence on the libellant by striking her with his fist, knocking her down, pushing her about, and pinching her; that he used profane and indecent language to her in the presence of their children, and that this course of treatment continued during a period when the libellee knew that the libellant was pregnant, so that her health was materially affected by his conduct. *Held,* that the evidence was sufficient to warrant a decree for the libellant.

At the hearing on a libel for divorce on the ground of cruel and abusive treatment, the judge properly ruled that a letter written by the libellant to the libellee condoning his misconduct, "if accepted and acted on by him, is conclusive evidence of condonation of all causes of divorce then known to the libellant, unless the libellee was guilty of such subsequent misconduct as legally to invalidate the same."

To revive a cause of divorce for cruelty, it is not necessary that the misconduct subsequent to condonation should be sufficient of itself to warrant a decree for divorce without regard to the previous cruelty, but it is enough if there are such frequent acts of unkindness or persistent ill treatment as to warrant a well grounded belief that, if the cohabitation continues, the ill feeling will quickly break out in acts of gross cruelty.

LIBEL, filed January 1, 1896, by Marietta R. Jefferson for a divorce from Herbert P. Jefferson, on the grounds of cruel and abusive treatment.

Hearing in the Superior Court, before *Dewey, J.,* who allowed a bill of exceptions, in substance as follows.

The libellant introduced evidence tending to show that she was married to the libellee on October 8, 1885, and that four children were born to them, of whom at the time of the trial three were living; that the libellee was a physician, who carried

on a private hospital for the treatment of diseases of women ; that at one time in August, 1894, when the libellant and libellee were together in the dining-room, the former happened to stand in the way of her husband as he was crossing the room, and that he struck her in the side with his fist and knocked her down and stunned her; that in the early part of September, 1895, he struck her on the left side of her face and cut her ear so that it bled, after which he again advanced with both fists raised, threatening to strike her again, whereat she took a chair, and, throwing it at him, said, "Don't strike me again"; that he then took her by the arm, dragged her across the floor of his office at the hospital, and threw her down the front steps; that she stumbled, but did not fall, and that the marks of his fingers on her arm lasted two weeks; that in November or December, 1895, the libellee was using very vile and obscene language to the libellant in the presence of two of their children, and, when requested by the libellant to desist therefrom, he struck her in the face ; that, continuously from August, 1894, the libellee made physical attacks and inflicted blows upon the libellant, and frequently, at a time when he knew that she was pregnant, took her by the arm and threw her violently out of the room in the presence of her children ; that he repeatedly pinched her, threatened her, shook his fist at her, and raised his cane to strike her; that on December 31, 1895, he came towards her shaking his fist, and almost touched her, and she, thinking he meant to strike her, jumped back; that in October, 1895, he took the children away from home and kept some of them at the hospital from ten days to two weeks, during which time they were not brought home, and the libellant did not see them; that the libellee frequently threw biscuits, knives, forks, and spoons to the floor, at the same time swearing at his wife, and at one time threw the coffee-pot out of the window ; that at different times before his children, he called his wife a " darn fool," a " God damn fool," " a dirty thing," told her to " shut up," said she was not fit to be in the house where anybody was, and told the children not to mind her for she was only a damn fool, and frequently addressed to her profane and indecent language ; that in September, 1895, the libellant became ill, and suffered a great deal of pain ; that the libellee would make her cry hysterically, and the more she

cried the worse he swore at her; that at her brother's house she frequently threw herself on the sofa and shed tears; that she appeared to be gradually fading away, and was afraid that she would break down or have convulsions, and was very much distressed about her children; and that on February 18, 1896, the libellant, in consequence of her physical and mental condition, brought about by the ill treatment and abuse of the libellee, was prematurely confined, and the child of which she was delivered died shortly afterwards.

On cross-examination, the libellant testified that on September 23, 1895, in response to a letter from the libellee, she wrote the following letter:

" My dear Husband, — I have just received your letter as I was out driving with the baby. I deeply regret all the trouble that is behind us, and am sorry my unruly tongue got the better of me. I have told you every time I have seen you that I had no intention of leaving you, that I prefer to live with you as your wife, and have made up my mind to stop quarrelling at all costs. I will endeavor as far as possible to retrench expenses, and be satisfied with whatever you think you can do for me and the children. Nothing in the world is so wretched for little children as to see their parents unhappy together, and I am more than willing to do whatever lies in my power. This affair has caused me quite as much misery as it has you. I have consulted no one in this matter, and I give you my word no one has seen this letter. Everything looks blue to you now for you are still very ill, but try to see the bright side of things. I am very sorry that I said anything about your not having the hospital, for of course you will have it, and make a grand success of it, and I shall be proud of it as you are, for your success will mean happiness to me. Please consent to see me, and for the sake of our children let us try to be happy.

" Your true Wife."

The libellant further testified, on cross-examination, that when she wrote the letter her husband had been ill two weeks at the hospital; that she did not think him responsible for his actions at the time, and that she was willing to make any concessions, and do anything else she could to help him; that although she tried not to be angry with her husband she sometimes answered

him back, but never swore at him; that he always began the altercations, and was always to blame; that he had abused her for seven years preceding the filing of the libel, but was much worse in the winter of 1895; that the hardest blow that he ever struck her was in September, 1895, at his hospital; that he pinched her as many as twenty times between September and January, one of the occasions being a day or two after the letter of September 23, and again a few days afterward on both arms, and at such times she cried out, but did nothing to him; that in November, 1895, the libellee blew tobacco smoke into his little girl's face until it nauseated her, and upon the libellant remonstrating, he took her by the arm, dragged her across the library, and threw her half way across the hall; that she resisted for a moment, and then yielded, and was forcibly thrown or pushed out; and that the libellee was a pretty strong man, and took hold hard.

On redirect examination, she testified that the libellee often gave wine to the little boys at dinner, and on one occasion, when the wine affected her son Richard, who was about seven years old, his father laughed, and said, " Richard, you are as full as a goat "; and that, on the libellant remonstrating, he gave him some more.

The libellee introduced testimony in denial and contradiction of the evidence of the libellant, and at the close of the case he requested the judge to rule : " 1. That the letter of the libellant to the libellee, September 23, 1895, is conclusive evidence of condonation of all causes of divorce then known to libellant. 2. That there is no evidence of such conduct on the part of the libellee since September 23, 1895, and before the filing of this libel, which revived the right to maintain the libel for any cause arising before September 23, 1895, and known to the libellant at the time of filing this libel. 3. That there is no evidence of cruelty or abusive treatment on the part of the libellee sufficient to justify a decree for the libellant."

The judge declined to rule as requested, but ruled that the letter of September 23, 1895, written to the libellee, " if accepted and acted on by him, is conclusive evidence of condonation of all causes of divorce then known to the libellant, unless the libellee was guilty of such subsequent misconduct as legally to invalidate the same."

The judge entered a decree for the libellant; and the libellee alleged exceptions.

*C. E. Hellier*, for the libellee.

*Samuel Hoar*, for the libellant.

KNOWLTON, J. The question in this case is whether there was evidence to warrant the findings of the judge who tried the case.

1. There was evidence that the libellee was guilty of cruel and abusive treatment of the libellant, even to the extent of inflicting considerable injury upon her person by violence. There was also evidence tending to show that he was cruel and abusive in other ways, so that her health was materially affected by his conduct.

2. The judge ruled that her letter to him written on September 23, 1895, " if accepted and acted on by. him, is conclusive evidence of condonation of all causes of divorce then known to the libellant, unless the libellee was guilty of such subsequent misconduct as legally to invalidate the same." To revive a cause of divorce for cruelty it is not necessary that the subsequent misconduct should be sufficient of itself to warrant a decree for divorce without regard to the previous cruelty. It is enough if there is such frequent unkindness or persistent ill treatment as to warrant a well grounded belief that, if the cohabitation continues, the ill feeling will quickly break out in acts of gross cruelty. *Gardner* v. *Gardner*, 2 Gray, 434. *Robbins* v. *Robbins*, 100 Mass. 150. *Smith* v. *Smith*, 167 Mass. 87. *Johnson* v. *Johnson*, 1 Ed. Ch. 439. *Threewits* v. *Threewits*, 4 Desaus. Eq. 560. *Armstrong* v. *Armstrong*, 27 Ind. 186. *Farnham* v. *Farnham*, 73 Ill. 497.

3. There was abundant evidence that the libellee broke the condition of his wife's condonation. She was then pregnant, and her condition of health called peculiarly for kind and tender treatment from her husband. It is unnecessary to review the testimony. There was evidence of great unkindness on his part, manifesting itself in a variety of ways, and materially affecting her health. The rulings and refusals to rule were correct.

*Exceptions overruled.*