MARGARET R. FREEMAN *vs.* ERNEST B. FREEMAN.

Suffolk.　January 17, 18, 1921. — March 9, 1921.

Present: RUGG, C. J.; BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Marriage and Divorce. Husband and Wife. Evidence,* Private conversations of husband and wife, Relevancy and materiality, Presumptions and burden of proof. *Witness,* Cross-examination. *Practice, Civil,* Findings of fact by judge, Exceptions.

In a libel by a wife for a divorce, the libellant specified that cruel and abusive treatment, alleged as the ground for the divorce, consisted of the "imposition upon" her "body by the libellee of blows and the exercise upon her person of physical force" occurring "several times between" January 1 "and on or about July 31, 1919." At the hearing of the libel, there was evidence warranting findings that, when the libellant was in ill health, the libellee frequently had assaulted her and during some of the assaults had indulged in foul, abusive and profane language, that on July 31, 1919, in the presence of her daughters and of her sister and brother-in-law, he assaulted and accused her of being an immoral, diseased woman and a liar, causing her to suffer in health, and to be confined in bed during the following day. *Held,* that a finding by the judge that the libellee inflicted upon the libellant cruel and abusive treatment within the meaning of R. L. c. 152; § 1, of the nature and character and at the times specified by her, as above described, and an order for a decree *nisi* "on the ground of cruel and abusive treatment as found by me," were warranted and were conclusive.

At the hearing of a libel for divorce, sought by a woman on the ground of alleged cruel and abusive treatment of her by her husband, the answer contained allegations that the libellee's conduct had "been in all instances fully justified by facts or information in his possession, and by his motive and purpose at the time," that the libellant had been guilty of cruel and abusive treatment of the libellee, and had been guilty of adultery. The judge, subject to exceptions by the libellee, refused requests of the libellee for rulings that there was no evidence to warrant a finding that any of the acts of the libellee were done with an intent or purpose to injure the libellant or with a malevolent motive toward her or that "upon the undisputed evidence the libellant's own conduct was such as to prevent her from obtaining a divorce" on the ground alleged, found that the allegations of the answer were not sustained, that the libellant always had been faithful to her marriage vows, and that she was entitled to a divorce. *Held,* that the findings of fact were conclusive and that the exceptions to the refusal of the rulings must be overruled.

A libellant specified that cruel and abusive treatment of her by the libellee, alleged as the ground for the divorce, consisted among other things in the libellee forbidding her to call upon friends except in his company, to shake hands with men acquaintances or men whom the libellee brought to the house, to meet

salesmen at stores or to go to the theatre or to call a physician without his approval or consent. At the hearing, the libellant testified that she refrained from engaging in certain social affairs and from associating with certain persons and with neighbors, and, subject to exceptions by the libellee, was permitted further to testify that she did so in consequence of conversations with her husband. *Held,* that the admission of the testimony was not in violation of G. L. c. 233, § 20, cl. 1, and that the exceptions must be overruled.

Where, at the trial of a libel for divorce, a conversation between the husband and wife in the presence of a nine year old child of the parties is offered in evidence, it is for the judge to determine whether the child was of sufficient intelligence at the time of the conversation to pay attention and to understand what was being said so that the conversation was not private within the provisions of G. L. c. 233, § 20, cl. 1; and an exception to a ruling by the judge admitting the testimony must be overruled.

At the hearing of a libel for divorce, a conversation between the husband and wife in a public street, where it does not appear that any passer-by or person in their vicinity paid any attention to them or even could hear their words, is inadmissible under G. L. c. 233, § 20, cl. 1.

A libellant specified that cruel and abusive treatment of her by the libellee, alleged as the ground for divorce, consisted among other things in his forbidding her "to call a doctor without his approval or consent." At the hearing, subject to an exception by the libellee, the libellant, who had testified that the libellee made appointments for her to go to a certain dentist and had identified one of her dentist's appointment cards which, she testified, to the best of her recollection the libellee had seen, was permitted to introduce the card in evidence, subject to an exception by the libellee. From the card, it appeared that appointments were made with the dentist for the libellant and the libellee together. *Held,* that the exception must be overruled, as it did not appear that the judge had exceeded his discretionary power.

Restatement, by BRALEY, J., of the general rules applying to determination of the scope of cross-examination of an adverse party at the hearing of a libel for divorce.

Where a libellee, in his answer to a libel by his wife for a divorce, has charged her with adultery and has averred that his actions toward her, and statements and accusations by him, whether oral or in writing, concerning her character and marital conduct, were all supported by facts or information in his possession, and has offered evidence which he contended tended to substantiate such facts and information, the libellant properly may be allowed to elicit from him in cross-examination evidence tending to show that he was not acting in good faith, that he knew from a prolonged investigation by detectives employed by him to shadow his wife that no improper relations existed between her and other men, and not only that the charges of adultery or even of an adulterous disposition were groundless, but also that he knew they were groundless.

At the trial of the libel above described, the libellee, after recounting an interview between his wife, himself, and a physician, who had since died, in the physician's office, relating to what he then said were improper relations between the physician and the libellant, offered further to show that, at a conversation with the physician the next day, the physician had told him that the libellant had been to him at least once a week "for the last several months" and also that the physician had "said he did not know why she was" at his office the night before

and that he "was surprised to see her." The evidence was admitted for the limited purpose of showing "information which came to the knowledge of the libellee" when seeking to ascertain the alleged unchastity of the libellant. The libellee excepted to such a limitation in its use. *Held,* that the ruling was sufficiently favorable to the libellee, and that the exception must be overruled.

At the hearing of the libel above described, and as bearing on issues there raised, it was *held* that a letter to the libellee from former counsel containing suggestions that if he could persuade his eldest daughter to "shift and stick by" him instead of her mother, it would "be a very desirable thing indeed," and other letters written by and to him, relating to his own temperament and disposition and to his recommendation of the physician, whom he had accused of adulterous relations with his wife, for a responsible public employment, were admissible.

At the hearing of the libel above described, the libellee introduced evidence tending to show that on a certain date the physician, with whom the libellant was alleged in the answer to have committed adultery, and who had died, was in another State in communication with her. A justice of the peace having testified that an application for registration of a motor vehicle, produced from the files of the office of the Massachusetts Highway Commission, was signed and sworn to before him in Framingham in this Commonwealth on the date named by the libellee's evidence, the application was admitted in evidence. *Held,* that the application was admissible within the discretion of the judge.

At the hearing of the libel above described, it was *held,* that, because they were matters within the discretion of the judge, exceptions of the libellee must be overruled to rulings of the judge

(1) Refusing, after the libellant had admitted in cross-examination that on several occasions, with intent to deceive, she had made untrue statements to her husband, to permit her to be further asked, whether "a woman who deceives her husband will hesitate to deceive a judge," and "which do you think the more reprehensible — to deceive your husband or to deceive the court;"

(2) Excluding, when a daughter of the parties had been shown an exhibit, and had testified that the handwriting of some of the words looked familiar, a further question, "Do you think you have ever seen the handwriting before?" and the answer, "As I have said, some of the words look familiar and others do not;"

(3) Refusing to permit counsel for the libellee, in cross-examination of a sister of the libellant, to use a letter which had been marked for identification but which had not been admitted in evidence.

At the hearing of the libel above described, a letter of the libellant to the libellee was introduced in evidence by the libellee, in which the libellant had said "Even if things have not been as smooth as we would like to have had them I would rather a blankety blank with you than a paradise with anyone else — and I am not sure but what the little rough places have made the bright, happy times even brighter and happier — eh?"; and it was *held* that she properly was permitted to explain that she there referred "to all the cruel and abusive times, to the times when he was abusive in language as well as the times when he was abusive by force, physical force."

At the hearing of the libel above described, and under specifications setting forth that cruel and abusive treatment of her by the libellee consisted, among other things, in his requiring "her, when pregnant, to tend the furnace and to perform other menial and manual work," and after testimony and letters of the

libellant had showed that she was harassed, when pregnant, by insistence by the libellee that she keep accurate accounts of household expenses, the judge, subject to an exception by the libellee, permitted the libellant to introduce in evidence books of account of household expenditures during a period of fourteen years which ended in 1917. The judge found that the libellee had inflicted upon the libellant cruel and abusive treatment within the meaning of R. L. c. 152, § 1, by physical violence in the year 1919, which was a finding based on a specification other than that under which the books were offered. *Held*, that, while the books might well have been excluded, the libellee plainly was not harmed, and the exceptions must be overruled.

LIBEL, filed in the Superior Court on August 23, 1919, for a divorce on the ground that the libellee had been guilty of cruel and abusive treatment of the libellant.

The answer, besides denying the allegation of cruel and abusive treatment, alleged condonation by the libellant, and, in paragraphs numbered nine, ten and (by amendment) eleven, that the libellee's conduct toward his wife, and whatever statements, oral or written, had at any time been made by him about her, had in all instances been fully justified by facts or information in his possession, and by his motive and purpose at the time; that the libellant, during the years 1915, 1916, 1917, 1918 and 1919 prior to the filing of the libel, had been guilty of cruel and abusive treatment of the libellee, and that the libellant during the years 1917, 1918 and 1919, had been guilty of adultery with a man named Herbert O. Benner.

Specifications were filed by both parties. The libellant specified regarding the nature and character of the acts upon which she relied as cruel and abusive treatment, in a paragraph numbered 1 (A), "The imposition upon your libellant's body by the libellee of blows and the exercise upon her person of physical force," which, in a paragraph numbered 2 (A), sub-paragraph 10, she specified, occurred "Several times between Jan. 1, 1919, at Hyde Park, and more especially in February, 1919; March or April, 1919; or about July 1, 1919, and on or about July 31, 1919, at Hyde Park."

Paragraphs 1 (J) (L) (N) (R) (T) and (U) of the libellant's specifications as to what comprised the alleged cruel and abusive treatment were as follows:

"(J) Denying her the privilege, although he was a man with a large income, of purchasing clothes and other necessaries

for herself and her children except upon his consent and approval."

"(L) Forbidding her to shake hands with men acquaintances, or men whom the libellee brought to the house; forbidding her to meet salesmen at stores because of alleged improprieties with them; or to go to the theatre, because actors flirted with her; or to call a doctor without his approval or consent for the same reason."

"(N) Forbidding her to call upon friends except in his company."

"(R) Requiring her to solicit money from her family to meet household and other expenses."

"(T) Requiring her when pregnant to tend the furnace and to perform other menial and manual work.

"(U) In general, vexing and harassing her by words and attitude."

The libel was heard by *Fosdick*, J. Material evidence is described in the opinion. Rulings, excepted to by the libellee, admitting some and excluding other evidence, which are referred to but not otherwise described in the opinion, were as follows:

Under her specification 1 (L), the libellant testified that the libellee made appointments for her to go to the dentist, and identified one of her dentist's appointment cards, stating that she had been able to find no others, and that to the best of her recollection the libellee had seen the card, the writing thereon being that of the dentist and not of the libellee. Subject to an exception by the libellee, the card then was admitted in evidence. Besides the name of the dentist, it had on it the following: "Appointment Mr. and Mrs. Freeman, Wednesday, January 12—at 10:45, Tuesday, January 18 — at 11:30."

The libellee had been permitted to testify in direct examination that on the night of January 16, 1918, he had found the defendant's motor car standing in a side street in Framingham about six hundred feet from the hospital and office of Dr. Herbert O. Benner, that the night was extremely cold, slippery and icy and the going from Hyde Park to Framingham very difficult for motor cars; that he waited at the car until ten minutes before eight o'clock, when the libellant returned to it; that there then ensued a conversation, following which the libellee and the libellant went to Dr.

Benner's office. The libellee's testimony as to a conversation with Dr. Benner which then followed was fully set out in the record. It was heated and related to accusations by the libellee of improper relations between the libellant and Dr. Benner and denials by both Dr. Benner and the libellant. The libellee then testified that he alone saw Dr. Benner the next afternoon at his Boston office, and, for the limited purpose of showing "information which came to the knowledge of the libellee," he was permitted to testify that the physician, who had died before the trial, had told him that the libellant had been to him at least once a week and sometimes twice a week "for the last several months" and also that he, the physician, had "said he did not know why she was" at his office the night before "and was surprised to see her." The libellee contended that, Dr. Benner having died, the testimony should have been admitted generally, and excepted to its use being limited.

A justice of the peace having identified an application for the registration of a motor vehicle signed by Dr. Benner, which was produced by the Massachusetts Highway Commission, testified that the physician swore to the application before him at Framingham on April 4, 1918, a day when, the libellee contended, the physician was in another State in communication with the libellant. The original application then was offered in evidence and, subject to an exception by the libellee, was admitted "on account of" the physician having deceased.

An exhibit was shown to one of the daughters of the parties by counsel for the libellee and she testified, in answer to the question, "I wonder if you would recognize that handwriting," that some of the words looked familiar. She then was asked, "Do you think you have ever seen the handwriting before?" and answered "As I have said, some of the words look familiar and others do not." The last question and answer were excluded, subject to an exception by the libellee. In answer to further questions, the witness testified that three words only on the exhibit looked like her mother's.

A letter dated January 13, 1913, from the libellant to the libellee, containing strong expressions of affection, was introduced in evidence by the libellee. The letter contained the following sentence: "Even if things have not been as smooth as we would like to have had them I would rather a blankety blank with you than a paradise with any one else — and I am not sure but what the little

rough places have made the bright, happy times even brighter and happier — eh?" As to the foregoing sentence, the libellant was asked, "To what did you refer when you said: 'Even if things have not been as smooth as we would like to have had them,' and 'as to the rough places'?" and, subject to an exception by the libellee, was permitted to answer, "Why, to all the cruel and abusive times, to the times when he was abusive in language as well as the times when he was abusive by force, physical force."

Certain books of account of household expenditures running from January 14, 1903, to February, 1917, offered in evidence by the libellant under her specifications 1 (J), (T), and (U), were admitted, subject to an exception by the libellee, the judge ruling that they had "a certain probative value as a mass and as such I admit them," but that, if the libellant's counsel expected to argue from any particular item, he should be obliged to call attention to it before the arguments. Previous to the admission in evidence of the books, the libellant had testified that she kept them under the libellee's direction continuously from the time of her marriage down to the time of her father's death; that the libellee checked these books up at least once a month and was angry if there were errors appearing in the balances, that, when she was sick in a hospital, the libellee brought the books to her and required her to make entries in them.

Other evidence tended to show that the libellee was earning from $15,000 to $25,000 per year. Items in the books showed that he allowed the libellant to credit herself for from $1 to $5 monthly for pressing his clothes, the amount varying according to the number of coats and trousers pressed. Letters by the libellant to the libellee, introduced in evidence before the books were offered, showed that in January, 1907, the libellant, although at that time pregnant, was sitting up until near midnight, "making out expenses;" that in February, 1909, she inquired of her husband whether he took "more than two cents out of" her pocket book, and stated that she had lost thirty-two cents on one day and fifteen cents the day following; and that in January, 1913, while pregnant and "uncomfortable," she wrote, "Last night I worked on expenses and this morning I finished them and started on the yearly accounts."

At the close of the evidence, the libellee made requests for

rulings which, with the disposition made of them by the judge, were as follows:

"(1) The evidence does not warrant a decree of divorce upon the ground of cruel and abusive treatment." Refused.

"(2) There is no evidence to warrant a finding that the libellee subjected his wife to cruel and abusive treatment as alleged in the libel and specification." Refused.

"(3) 'Cruel and abusive treatment' within the meaning of R. L. c. 152, § 1, must 'be, at least, such cruelty as shall cause injury to life, limb or health, or create a danger of such injury, or a reasonable apprehension of such danger upon the parties continuing to live together.'" Given.

"(4) 'The actual intent and purpose with which an act is done may be of importance when the question is . . . one . . . of dissolving the marriage tie.'" Given.

"(5) The words 'cruel and abusive treatment' . . . 'import on their face conduct directed toward the other party, and with a malevolent motive.'" Given.

"(6) Cruelty, as foundation for a divorce, must be unmerited and unprovoked. There must be cruelty 'without the fault of the wife.'" Given.

"(7) When cruel and abusive treatment is charged, and the proof consists of words spoken, which contains no threat of actual violence, 'the purpose and intent of speaking them may be considered.'" Given.

"(8) Neither words nor acts which do not involve physical violence are sufficient to constitute cruel and abusive treatment within the meaning of the statute unless it is shown that the language was uttered or these acts were done with a malicious intent and for the purpose of injuring the libellant. As there was nothing to show such an intent and none can be inferred from the evidence, the court is not warranted in granting a divorce." First sentence given. Remainder of ruling refused.

"(9) Even though what was said by the libellee were intended by him to sting the libellant's feelings and she were affected injuriously in her health to some extent by his acts and words, that would not amount to 'cruel and abusive treatment' if he had no purpose to harm her in this manner." Given.

"(10) There is no evidence to warrant a finding that any of the

acts of the libellee were done with an intent or purpose to injure the libellant or with a malevolent motive toward her." Refused.

"(11) 'A wife is not entitled to be divorced on the ground of ill treatment received from her husband, if that ill treatment has been drawn upon her by her own misconduct. The cruelty which lays a just and legal foundation for a divorce must be unmerited and unprovoked.'" Given.

"(12) Conduct of the libellant in connection with the offence which is alleged as a cause for divorce, such as conduct provoking the cruelty, is a complete defence although not sufficient to amount to a cause for divorce in favor of the libellee or to constitute a valid plea in recrimination." Given.

"(13) If the conduct of the wife 'be totally incompatible with the duty of a wife,' if it justly provoke the indignation of the husband, she cannot obtain a divorce for cruel and abusive treatment." Given.

"(14) Upon the undisputed evidence, the libellant's own conduct was such as to prevent her from obtaining a divorce upon the ground of 'cruel and abusive treatment.'" Refused.

"(15) Upon the undisputed evidence any marital offence committed by the libellee was condoned by the libellant before the filing of the libel." Refused.

"(16) Whether or not given acts amount to cruel and abusive treatment within the meaning of the statute depends upon all the circumstances of the case, and, in part at least, upon the motive and purpose with which those acts were done." Given.

"(17) Charges or accusations made by one of the parties against the other cannot amount to cruel and abusive treatment if the party making them had, in fact, reasonable ground for believing them to be true and justified." Given.

"(18) There is no evidence to warrant a finding that the libellee ever made accusations or charges against his wife without reasonable and probable cause for believing them to be true." Refused.

"(19) It is a general rule of practice that it is not ordinarily fit or proper to grant a divorce upon the uncorroborated testimony of the libellant." Given.

The judge found that the libellant and the libellee were lawfully married to each other in Worcester on January 14, 1903; that thereafter they lived as husband and wife in this Commonwealth

at Dedham from 1904 to 1911 inclusive and at Hyde Park from 1911 to July 31, 1919; that the libellant had always been faithful to her marriage vows and obligations; "that the libellee inflicted upon the libellant cruel and abusive treatment within the meaning of R. L. c. 152, § 1, of the nature and character set forth in paragraph numbered 1 (A) of the libellant's specifications," that such treatment was so inflicted "at the times and places set forth in paragraph numbered 2-A, sub-paragraph 10 of the libellant's specifications;" that the allegations affirmatively made by the libellee in paragraphs numbered 9, 10, and (by amendment) 11 of his answer were not sustained, and that the libellant "did not condone the cruel and abusive treatment which I have found was inflicted as above stated." The judge ordered that "there be entered a decree *nisi* of divorce on the ground of cruel and abusive treatment as found by me." The libellee alleged exceptions.

T. *Hunt*, (*H. Alden* with him,) for the libellee.

D. E. *Hall*, (*F. D. Putnam* with him,) for the libellant.

BRALEY, J. The exceptions recite that the parties were married on January 14, 1903, and thereafter lived together in this Commonwealth until July 31, 1919, when "the libellant left the libellee for good," and on August 23, 1919, brought a libel for divorce charging her husband with cruel and abusive treatment, and asking for the care and custody of the four surviving minor children born of the marriage. A decree *nisi* having been ordered with custody of the children, the case is before us on exceptions of the libellee to the refusal of the judge to rule that the evidence did not warrant a decree or a finding that the libellant had been subjected to cruel and abusive treatment as alleged in the libel and specifications, and that upon the undisputed evidence her own conduct had been such as to prevent her from obtaining a divorce, and to the admission and exclusion of evidence.

The sufficiency of the proof is immaterial. If there was any evidence which as matter of law warranted a decree, the rulings requested could not have been given, and the exceptions to the findings cannot be sustained.

The statute among other causes provides that a divorce may be decreed for cruel and abusive treatment. R. L. c. 152, § 1. It was held in *Bailey* v. *Bailey*, 97 Mass. 373, where the libel alleged that the libellee had "treated the libellant with extreme cruelty, and

bruised and beat the person of the libellant in such a manner as to endanger her life, and threatened to take her life," that cruelty as a ground for divorce must be of such a character "as shall cause injury to life, limb or health, or create a danger of such injury or a reasonable apprehension of such danger upon the parties continuing to live together. This is broad enough to include mere words, if they create a reasonable apprehension of personal violence, or tend to wound the feelings to such a degree as to affect the health of the party, or create a reasonable apprehension that it may be affected." See *Ford* v. *Ford*, 104 Mass. 198; *Freeborn* v. *Freeborn*, 168 Mass. 50, 52. The distinction between cruel and abusive treatment and extreme cruelty, also a ground for divorce under Gen. Sts. c. 107, § 9, Pub. Sts. c. 146, § 1, but omitted from R. L. c. 152, § 1, is pointed out in *Lyster* v. *Lyster*, 111 Mass. 327, 328, 329, *Jefferson* v. *Jefferson*, 168 Mass. 456, *Osborn* v. *Osborn*, 174 Mass. 399, 400.

The judge's findings on which he granted a divorce having been confined to the acts and conduct of the libellee during the period from January 1 to July 31, 1919, it is unnecessary to consider specifically prior allegations of his marital wrongdoing, or to dwell on his admissions of being often angered and slapping her, or on evidence which, if believed, showed that he had struck her many times, once with clinched fist, and once by a blow so violent as to cause her nose to bleed, and that, after knocking her down in the dining room, he dragged her into the living room and threw her against a bookcase. The testimony of the libellant, corroborated by the evidence of her sister and of her own daughters, was sufficient to show that the libellee, when she was suffering from ill health, frequently had assaulted her and during some of the assaults had indulged in foul, abusive and profane language. It also could be found that on July 31, 1919, in the presence of her daughters and of her sister and brother-in-law, he assaulted and accused her of being an immoral, diseased woman and a liar, causing her to suffer in health, and confining her in bed during the following day. The evidence in the record without further recitals justified the judge in finding that the libellee was guilty of cruel and abusive treatment to the extent of inflicting injuries upon her person by violence, which never have been condoned. The rulings requested on this issue in so far as not given were rightly refused. *Lyster* v. *Lyster*,

111 Mass. 327. *Bailey* v. *Bailey, supra. Freeborn* v. *Freeborn,*
168 Mass. 50, 52. *Jefferson* v. *Jefferson,* 168 Mass. 456, 460. *Osborn* v. *Osborn,* 174 Mass. 399. And the general finding that the
libellee "inflicted upon the libellant cruel and abusive treatment
within the meaning of R. L. c. 152, § 1," and the order for a decree
"on the ground of cruel and abusive treatment as found by me,"
having been warranted, is conclusive. *Dickinson* v. *Dickinson,*
167 Mass. 474.

The defences, pleaded in the answer, of adultery, and of justification and excuse arising from alleged misconduct of the libellant,
more fully appearing in the specifications, depended upon the evidence, and the judge having expressly found that the libellant had
always been faithful to her marital vows and obligations, he correctly declined to rule, that her own conduct furnished any justification for the libellee's acts, or barred a divorce. *Lyster* v.
*Lyster,* 111 Mass. 327. *Pollock* v. *Pollock,* 71 N. Y. 137. See
*Cushman* v. *Cushman,* 194 Mass. 38; *Newman* v. *Newman,* 211
Mass. 508. The general finding, moreover, for the libellant is a
finding that in so far as the defence depended upon issues of fact,
the libellee had failed in his contentions. *Boston Supply Co.* v.
*Rubin,* 214 Mass. 217, 220.

We perceive no reversible error in the rulings relating to evidence.
The libellant was properly permitted to testify in her direct and
redirect examination that she refrained from engaging in certain
social affairs, and from associating with certain persons or with
neighbors in consequence of conversations with her husband.
*Sampson* v. *Sampson,* 223 Mass. 451, 458. And it is unnecessary
to decide whether, in his attempt to show misconduct, the libellee,
having substantially introduced through her cross-examination
every instance of his remonstrances, has shown that he has been
prejudiced. See *Morrison* v. *Lawrence,* 186 Mass. 456, 458.

The admission of a conversation between the spouses in the
presence of the daughters, the eldest being nine years old, shows
no ground of exception. It was for the judge to determine whether
she was of sufficient intelligence at the time to pay attention, and
to understand what was being said. *Lyon* v. *Prouty,* 154 Mass.
488, 490. *Commonwealth* v. *Teregno,* 234 Mass. 56. The conversation between them in a public street was properly excluded.
It did not appear that any of the passers-by or persons in their

vicinity paid any attention to them, or even could hear the words.

The judge is not shown to have exceeded his discretionary power in the admission of the dentist's card, or in the questions admitted and evidence introduced in the libellee's cross-examination. His credibility as a witness, as well as disposition and honest belief in the accusations against his wife could be fully tested and explored. "In cross-examination, an adverse party is usually allowed great latitude of inquiry, limited only by the sound discretion of the court, with a view to test the memory, the purity of principle, the skill, accuracy, and judgment of the witness; the consistency of his answers with each other, and with his present testimony; his life and habits . . . ." *Hathaway* v. *Crocker*, 7 Met. 262, 266. A witness and an adverse party, "may always be subjected to a strict cross-examination, as a test of his accuracy, his understanding, his integrity, his biases, and his means of judging." *Perkins* v. *Adams*, 5 Met. 44, 48. And the cross-examination need not be restricted to the inquiries made in chief. *Commonwealth* v. *Smith*, 163 Mass. 411, 431. The rule is again fully stated in *Jennings* v. *Rooney*, 183 Mass. 577, 579, where the cases are collected. The libellee having charged his wife with adultery, and further averred in his answer that his actions toward her, and statements and accusations whether oral or in writing concerning her character and marital conduct, were all supported by facts or information in his possession, and having offered evidence which he claimed tended to sustain all of them, the libellant was rightly allowed to elicit from him in cross-examination evidence tending to show he was not acting in good faith, and knew from the prolonged investigation of detectives employed to shadow his wife, that no improper relations existed between her and other men, and not only was the charge of adultery or even of an adulterous disposition groundless, but he knew they were groundless.

The conversation of the libellee with a physician employed by him as medical adviser to the libellant, but who died before the trial, and with whom he claimed she committed adultery, having been admitted solely as "information which came to the knowledge of the libellee" when seeking to ascertain her alleged unchastity, he contends, it should have been admitted without such

limitation. The ruling was sufficiently favorable to the libellee. *Commonwealth* v. *Trefethen*, 157 Mass. 180.

The letter of his former counsel containing suggestions that if he could persuade his eldest daughter to "shift and stick by" him instead of her mother, it would "be a very desirable thing indeed," and other letters written by, and to him, relating to his own temperament and disposition, and to his recommendation of the physician for a responsible public employment, were admissible. *Thayer* v. *Thayer*, 101 Mass. 111, 113. *Commonwealth* v. *Abbott*, 130 Mass. 472, 474. *Smith* v. *Smith*, 167 Mass. 87. *Bennett* v. *Susser*, 191 Mass. 329. *Commonwealth* v. *Howard*, 205 Mass. 128, 148.

The evidence showing the date of registration of the physician's automobile was admissible in the discretion of the judge. It tended to prove he was in this Commonwealth at that time, instead of being in another State where he was said by the libellee to have been in communication with the libellant. *Commonwealth* v. *Williams*, 105 Mass. 62, 68, 69, and cases there cited. *Commonwealth* v. *Choate*, 105 Mass. 451, 459.

The libellant having admitted on cross-examination, that on several occasions with intent to deceive, she had made untrue statements to her husband, was further asked, whether "a woman who deceives her husband will hesitate to deceive a judge," and "which do you think the more reprehensible — to deceive your husband or to deceive the court?" But the admission of these questions as well as the questions asked in cross-examination by libellee's counsel of the daughters concerning the handwriting in a certain letter, and whether he should be permitted in his cross-examination of the libellant's sister to use a letter marked for examination but not as yet introduced in evidence, were matters within the discretion of the judge, and his refusal to allow the questions, or the letter to be used, affords no ground of exception. *Jennings* v. *Rooney, supra. Smith* v. *Smith, supra. Koplan* v. *Boston Gas Light Co.* 177 Mass. 15, 25.

The libellant also was properly allowed to explain that by the words "the little rough places" in a letter to her husband she meant, when he was abusive in language, as well as when "he was abusive by force, physical force."

The judge well might have excluded the cash books kept by

her showing household expenditures for many years, as having little, if any, probative value on the issues between the parties. But, it being plain that the libellee could not have been prejudiced, this exception should not be sustained. *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15, 23.

*Exceptions overruled.*