ETHEL Q. CURTISS *vs.* ROY A. CURTISS.

Berkshire.     September 19, 1922. — October 31, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

PEARL F. MORRIS *vs.* NAPOLEON J. MORRIS.

Hampden.     September 21, 1922. — October 31, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

MARJORIE J. WITMER *vs.* ROY C. WITMER.

Worcester.     September 25, 1922. — October 31, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Marriage and Divorce,* Cruel and abusive treatment.     *Husband and Wife.*

Acts or words are sufficient to constitute cruel and abusive treatment within the purview of R. L. c. 152, § 1, now G. L. c. 208, § 1, where the acts are committed or the words are spoken with a malevolent motive or an intention to injure or to cause suffering to the libellant, and it is found that injury or the danger of injury to the libellant's life, limb or health, or a reasonable apprehension thereof, is thereby caused.

At the hearing of a libel for divorce brought by a wife on the ground of cruel and abusive treatment of the libellant by the libellee, the following facts appeared: The wife learned from the husband of his infatuation with another woman, his preference for this other woman above his wife, and his determination to continue in his relations with the other and in neglect and disregard toward his wife and children. This knowledge and its heartless communication caused the wife great mental suffering, so that her physical health was seriously impaired. The husband was informed by the family physician that his conduct was the cause of the failure in the health of his wife, and was told that still greater injury to her physical health would follow if he persisted in his course. The husband declared that he did not care, and would do worse, if his wife did not yield to his wish for a separation, and persisted in his offensive conduct. The husband, a man of violent and uncontrolled temper, harshly and roughly declared in his wife's presence that he would make it unbearable for her to live with him, banged doors, beat furniture and made the house resound with his noise to add emphasis to his statement, so that with reason she might fear actual physical violence at his hands if she did not step aside and further his wishes in the matter. His purpose, in so speaking and acting, was to obtain a separation, not in order to cause her pain, but in order through her pain, if need be, and regardless of her feelings, mental or physical, to attain his end. *Held,* that cruel and abusive treatment within the meaning of G. L. c. 208, § 1, was shown and that a decree *nisi* for divorce should be made.

At the hearing of a libel by a wife for divorce on the ground of cruel and abusive treatment, the following facts appeared: The husband, knowing himself to be afflicted with a venereal disease known as gonorrhea, which he had contracted through illicit intercourse, deliberately communicated it to his wife, who at the time was ignorant of his condition. He left the libellant and went away with another woman, and it was not until then that she consulted a physician and was informed of the nature of the disease, from which a radical cure rarely is effected and recurrent attacks are probable. The libellant's health was impaired by the disease and the nervous strain thereby caused. *Held,* that cruel and abusive treatment within the meaning of G. L. c. 208, § 1, was shown and a decree *nisi* was warranted.

At the hearing of a libel by a wife for a divorce on the ground of cruel and abusive treatment, the following facts appeared: The libellee separated from the libellant in 1921. For over five years before that he had continuously and repeatedly scolded, nagged, sworn at and frequently used loud and exasperating language toward the libellant and habitually was rude, harsh, disagreeable and ugly in his manner toward her. On one occasion he compelled her, and on various other occasions he attempted by verbal threats and by force to compel her to have relations with him when he knew that she reasonably feared contracting a venereal disease from him. About a year before the separation, when she was advanced in pregnancy about two months, he compelled her by words used by him to undergo a surgical operation against her will as a result of which she was ill practically all of the following winter and was in bed for about six weeks. During the last part of the time before the separation, he several times forcibly kissed her against her will when he had an infected throat which emitted a peculiar and disagreeable odor and which she reasonably feared came from a venereal disease that might be communicated by him to her. His conduct had a marked detrimental effect on her physically and mentally, making her ill much of the time, causing her much mental anguish, and keeping her in a state of nervousness, anxiety and fear, and she feared personal violence from him and lived in a state of apprehension of such violence. He expressed to a friend of his and of the libellant his hatred of the libellant, and stated that she was repulsive to him, that she was mentally irresponsible and that other women were more attractive to him. *Held,* that cruel and abusive treatment within the meaning of G. L. c. 208, § 1, was shown and that a decree *nisi* was warranted.

LIBEL for divorce on the ground of cruel and abusive treatment of the libellant by the libellee, filed in the Superior Court for the county of Berkshire on June 10, 1921; also a

LIBEL for divorce on the ground of cruel and abusive treatment of the libellant by the libellee, filed in the Superior Court for the county of Hampden on March 29, 1921; also a

LIBEL for divorce on the ground of cruel and abusive treatment of the libellant by the libellee, filed in the Superior Court for the county of Worcester on October 6, 1921.

All the libels were uncontested.

The first libel was heard by *Wait*, J. Material facts found by him are described in the opinion. He ruled as a matter of law that the facts found by him did not constitute cruel and abusive treatment within the meaning of that term as used in R. L. c. 152, § 1, and that upon those facts he was not authorized to enter a decree for a divorce, ordered the libel dismissed without prejudice to a libel for any other cause, and reported the case to this court for determination.

The second and third libels were heard by *Keating*, J. Material facts found by him are described in the opinion. He ordered a decree *nisi* to be entered in each case and reported the cases to this court for determination.

*T. Hunt*, for the libellant in the first case.

*R. J. Talbot*, for the libellant in the second case, submitted a brief.

*G. K. Hudson & G. M. Barrows*, for the libellant in the third case, submitted a brief.

BRALEY, J. The libel in each case is uncontested. It is brought by the wife against the husband for a divorce for cruel and abusive treatment as provided in G. L. c. 208, § 1. The question common to all the cases, is, whether upon the facts reported, the libellant as matter of law is entitled to a decree. It is settled that acts or words are sufficient to constitute cruel and abusive treatment within the purview of R. L. c. 152, § 1, now G. L. c. 208, § 1, where the acts are committed, or the words are spoken with a malevolent motive or an intention to injure or to cause suffering to the libellant, if it is found that injury or the danger of injury to the libellant's life, limb or health, or a reasonable apprehension thereof, is thereby caused. *Freeman* v. *Freeman*, 238 Mass. 150, 159, 160. *Bailey* v. *Bailey*, 97 Mass. 373. *Peabody* v. *Peabody*, 104 Mass. 195. *Lyster* v. *Lyster*, 111 Mass. 327. *Cowles* v. *Cowles*, 112 Mass. 298. *Holt* v. *Holt*, 117 Mass. 202. *Freeborn* v. *Freeborn*, 168 Mass. 50, 52. *Bonney* v. *Bonney*, 175 Mass. 7, 8. *Armstrong* v. *Armstrong*, 229 Mass. 592, 593, 594. The findings of the trial judge are conclusive. *Freeman* v. *Freeman*, *supra*. It appears in the first case, "that in November, 1920, the wife learned from the husband of his infatuation with another woman; his preference for this other woman above his wife; and his determination to continue in his relations with the other and in neglect and

disregard toward his wife and children. . . . This knowledge and its heartless communication caused the wife great mental suffering, so keen that her physical health was seriously impaired. . . . The husband was informed by the family physician that his conduct was the cause of the failure in the health of his wife, and was told that still greater injury to her physical health would follow if he persisted in his course. . . . The husband declared that he did not care, and would do worse, if his wife did not yield to his wish for a separation," and persisted in his offensive conduct. "He has, harshly and roughly, declared in his wife's presence that he will make it unbearable for his wife to live with him; and has banged doors, beaten furniture and made the house resound with his voice to add emphasis to his statement. . . . He has always been a man of violent and uncontrolled temper. . . . His wife may, with reason, fear actual physical violence at his hands, if she does not step aside and further his wishes in this matter. His purpose, in so speaking and acting with his wife, is to obtain the separation he desires, not in order to cause her pain, but in order through her pain, if need be, and regardless of her feelings, mental or physical, to attain his end."

The case of *Armstrong* v. *Armstrong,* 229 Mass. 592, is plainly distinguishable. A finding was warranted in the present case that the libellee with full knowledge of the pain and harm to health caused to his wife by his words and acts, persisted in his malevolent conduct for the sole purpose of forcing her to separate from him. *Turner* v. *Turner,* 234 Mass. 37, 41.

The facts found constitute cruel and abusive treatment.

In the second case the libellee, knowing that he was therewith afflicted, deliberately communicated to his wife, who at the time was ignorant of his infected condition, a venereal disease known as gonorrhea, which he had contracted through illicit sexual intercourse. It was not until after the libellee had left the libellant, and "went away with another woman," that she consulted a physician and was informed of the nature of this disease from which she was suffering. It is expressly found that a radical cure is rarely effected and recurrent attacks are probable, and that the libellant's health has been impaired by the disease and the nervous strain thereby caused. These findings are sufficient to sustain the libel.

The record in the third case shows that, "The alleged acts of cruel and abusive treatment by the libellee . . . occurred between November 1, 1915, and the date of the separation of the parties, . . . June 29, 1921, and consisted, in part, of continued and repeated scolding, nagging and swearing, and the frequent use of loud and exasperating language directed to the libellant. He was . . . habitually rude, harsh, disagreeable and ugly in his manner toward her. His conduct as above described was directed to the libellant, . . . increasing in severity toward the end of said period. Other acts of cruel and abusive treatment consisted in part of compelling her on one occasion and attempting to compel her on various other occasions by verbal threats and by force to have relations with him when he knew that she reasonably feared contracting a venereal disease from him. In August, 1920, when she was advanced in pregnancy about two months he compelled her by words used by him to undergo a surgical operation against her will as a result of which she was ill practically all of the following winter and was in bed for about six weeks. During the last part of said period at several times he forcibly kissed her against her will when he had an infected throat which emitted a peculiar odor making the act disagreeable and dangerous and knowing that she realized the disagreeableness and danger. The libellee had an illness in 1920 and 1921 and the libellant learned enough about said illness to justify her suspicions that he had a venereal disease, so that her fear from contracting that disease from having intercourse with him or from kissing him was reasonable. . . . The aforesaid conduct of the libellee had a marked detrimental effect on the libellant physically and mentally, making her ill much of the time, causing her much mental anguish, and keeping her in a state of nervousness, anxiety and fear. For several months before she left him his language and demeanor toward her were such that she feared personal violence from him and lived in a state of apprehension of such violence. The libellant separated from the libellee on June 29, 1921, leaving the house where they were living and taking their three children with her because of the way in which he treated her and her fears and apprehensions caused thereby. Since that time he has not communicated with her, by writing or otherwise. During the first few months after leaving him her physical, nervous and mental

condition became greatly improved and has since continued to improve. There was no evidence that the above described acts and conduct of the libellee were committed under provocation of any kind. The libellee expressed to a friend of his and of the libellant his hatred of the libellant, and stated that she was repulsive to him, that she was mentally irresponsible, and that other women were more attractive to him. On a number of occasions his language and demeanor were so rude, ugly and disagreeable that he hurt her feelings and made her cry, and on those occasions he intended to hurt her feelings by what he said and did."

The acts of the libellee toward his wife, and treatment of her, when he knew that he was suffering from a venereal and infectious disease that could be communicated by contact with her person, by which she was made "ill much of the time," warranted the judge in ruling as matter of law that the libellant had made out a case. It follows that in the first case a decree *nisi* is to be entered, while in the second, and third cases, the decree granting a divorce *nisi* is to stand.

*So ordered.*